# KAVANAUGH & WIFE *vs.* THOMPSON & WIFE

## ET ALS.

1. On the marriage of an administratrix, the husband becomes administrator in her right for his own safety, and takes upon himself all the duties, and is entitled to all the privileges, which belonged to her before the marriage: He is therefore the proper representative of both, and service of citation upon him alone is sufficient to support a final settlement of the administration.

2. A joint administrator cannot complain that separate judgments are rendered against him and his co-administrator for the assets found in their hands respectively:    It is error without injury, and constitutes no ground for reversal.

3. On the final settlement of the estate in the Orphans' Court, the distributees sought to charge the administrators with the value of four slaves, which they had returned in the inventory, and produced in evidence the record of a judgment in detinue, rendered some eight years before, in favor of the administrators, as such, against one E. L., showing the recovery of the slaves in question.    The administrators, to show that the slaves nevertheless were not assets of the estate, offered to prove that during the pendency of the suit, E. L., who was insolvent, filed his bill in chancery against them, claiming one half of the entire estate of their intestate; that a compromise was effected, by which it was agreed that E. L. should dismiss his bill, relinquish his claim to all the estate, except the slaves sued for by the administrators, and allow judgment to go against him for *them*, for the purpose of protecting them against liability for his debts; and

that, this arrangement having been carried out, one of the administrators, in his own right, afterwards purchased the slaves from E. L. The court rejected the proof. *Held*—1st. That the trust in favor of E. L., which it was the object of the evidence to establish, was void, by reason of the fraud intended his creditors, and being void, the exclusion of the evidence was not erroneous, since its admission could not possibly have affected the result. 2d. That by the recovery, the slaves or their alternate value, if insisted on by the distributees, were assets of the estate, and the administrators chargeable with such value for neglecting to enforce the judgment.— 3d. That the title to the slaves, acquired by the purchase from E. L., cannot, under the circumstances, be set up against that of the estate.

4. Where administrators are guilty of a conversion, in permitting a slave belonging to the estate to go into the possession of a third person, and the slave is lost, the distributees may elect either to accept another slave that the administrators have substituted in the stead of the one lost, or to charge them with his value. If they elect the latter, the court may properly charge the administrators with the amount recovered by them from the person in whose possession the slave was, when lost, as the value of such slave.

5. It is the duty of the court to protect the interest of minors, by permitting them, where they have an election, to make *that* which will be most advantageous to them, even after they have indicated an intention to make one which is less so.

6. Administrators cannot complain that a decree, regular in form, is rendered against them in favor of infant distributees, without the appointment of guardians *ad litem*.

Error to the Orphans' Court of Madison. Tried before the Hon. C. C. Clay, Judge.

GEORGE CONNELLY and Catharine Lewis, the widow of the deceased, were appointed in 1832 administrator and administratrix on the estate of William Lewis. Catharine, the widow, subsequently intermarried with Cortez D. Kavanaugh, one of the plaintiffs in error. Connelly and Kavanaugh, the husband, having been cited to a final settlement, they appeared, and each of them filed a separate account, and on the settlement, which was had on the 2d Monday in December 1846, it being made to appear that from the year 1832 to the last of the year 1835, the estate was in charge of and managed exclusively by Connelly, and that after that time it was turned over to and exclusively managed by the administratrix, or by her and her husband, Kavanaugh, the court proceeded to settle the administration of each separately, and to render decrees accordingly

Kavanaugh & Wife v. Thompson & Wife et als.

in favor of the distributees, who are the defendants in error. By a bill of exceptions taken in the settlement of the administration of Kavanaugh and wife, it appears that the distributees moved the court to charge the said Kavanaugh and wife with the sum of $2450, the value of four slaves, with interest thereon, and in support of the motion read to the court a transcript of the proceedings and judgment of the Circuit Court of Madison and of the execution issued thereon in an action of detinue instituted by said Catharine Lewis as administratrix and Connelly as administrator, and revived in the names of Kavanaugh and Connelly, administrators, against Eli Lewis, and which showed a recovery by them at the fall term 1838 of said court of the slaves, with the value of which Kavanaugh and wife are now sought to be charged, and that the execution issued thereon was stayed by the plaintiffs. Rebutting evidence was offered by the said Kavanaugh and wife, which is fully set out in the opinion of the court, and which the Orphans' Court excluded. The distributees further sought to charge the said Kavanaugh and wife with the hire of a slave by the name of Jack, then in Kavanaugh's possession, which was resisted by them, and a bill of sale produced in evidence, by which it was shown that said slave was conveyed to said Kavanaugh by Hollowell and Echols in February 1838, for the recited consideration of $1050. At a subsequent stage of the trial, Kavanaugh offered to account for said slave and his hire as assets of the estate. It was then made to appear that the estate owned a slave by the name of Little Bill, whom one Blevins carried to Dallas county and placed in charge of one Michael Kenan, who took him to Mobile, where he died; that said Blevins purchased Jack, who was taken by Kavanaugh in lieu of Little Bill and held by him from that time as the property of the estate; and that Kavanaugh subsequently caused suit to be brought in the names of the administrators, but for his own benefit, against Kenan, in which he recovered $1680 for Little Bill. The distributees thereupon electing to charge the administrators with the value of Bill, the court refused to regard Jack as the property of the estate, and suspended the settlement until a transcript of the judgment against Kenan could be procured from the Circuit Court of Mobile, in which it was rendered, when it charged said Kav-

anaugh with the amount of said judgment with interest. The said Kavanaugh and wife now assign as error—1st. That the decree was rendered without notice to the wife. 2d. That the court rendered separate decrees against joint administrators. 3d. That the court charged them with the value of the four slaves. 4th. That the court rejected the evidence in reference to said slaves. 5th. That they were charged with the recovery for Little Bill. 6th. In acting on evidence not judicially before it, and ordering a transcript to be procured from Mobile.

ROBINSON, for the plaintiffs in error:

1. The judgment against Catharine Kavanaugh is erroneneous, because no process was ever issued against or served upon her, nor does the record show that she appeared by herself or otherwise.

2. Kavanaugh and wife and Connelly were joint administrators. It appears from the account and decree against Connelly, that he had all the property in his possession from 1832 till 1835. After this he placed the property in the hands of Kavanaugh. Therefore, they were jointly and not separately liable to the heirs of Lewis, and a joint account and decree should have been rendered against all.—Langford v. Gascoigne, 11 Ves. 333; Little et al. v. Knox, adm'r, at January Term 1849. By thus stating the accounts separately, the court deprived the sureties of the right to go against Connelly for the sum found against Kavanaugh and wife. Being jointly liable to the heirs of Lewis, the Orphans' Court had no power to ascertain and act upon the separate liability of each. The separate liability of each can only be ascertained by a direct proceeding between the administrators. The whole jurisdiction of that court is conferred by our statutes, and they do not give it this.

3. The testimony of McClung and others and of said suit in chancery, offered and rejected, did not contradict the record of the suit at law, and should have been received and considered by the court. Being considered, it tends strongly to show that the intestate held the one half of the whole of his property, real and personal, in trust for his brother Eli Lewis. If this be its tendency, how can it be said to contradict the

judgment at law?   To establish such a trust, chancery alone could aid him.   If the doctrine contended for below be correct, then it would be impossible ever to establish a trust against a judgment at law.   This is surely wrong.   Again, when considered, we think the testimony clearly shows that the administrators, by surrendering the four slaves to Eli Lewis in satisfaction of his claim to one half of all the property, not only acted in good faith, and as prudent men would have acted in their own affairs, but that they secured for the estate a real and substantial benefit.   For had Eli Lewis succeeded, (for which his chance was fair,) he would have taken from the estate property of much greater value.—2 Williams on Ex'rs, 1109; Blue v. Marshall, 3 P. Wms. 381; Ligh v. Holloway, 8 Ves. 213; Meeker v. Vanderveer, 3 Green, 392; Thomas v. White, 3 Litt. 184; Head v. Perry, 1 Monr. 256; Dawson v. Clay's Heirs, 1 J. J. Marshall, 167; Griswold v. Chandler, 5 N. H. 492.   In this last it was expressly held that an administrator is not bound to litigate a *doubtful* claim.— Further—this proof shows that the administrators never had the possession of the slaves; and the title being doubtful, and they not bound to litigate it, they cannot be charged with the value of the property.

4. As to the slave Little Bill, the proof shows that very soon after his death, Blevins, in discharge of his liability, bought another of greater value and put in his place, which other was accepted by the administrators and kept and used as a part of the estate.   Here again, the estate was benefitted by getting a slave of greater value than the one lost.

5. It further appears that the heirs of Lewis ratified this transaction, by seeking on the settlement to charge the administrators with his hire.   This was at first resisted, but afterwards assented to by the administrators.   It was clearly within the election of said heirs to take Jack in the place of Bill, and after so electing, the court had no power to disregard that election and to charge the administrators with the amount of the judgment against Kenan.

ORMOND, for defendant:

1. It cannot be objected that Mrs. Kavanaugh was not served with process.   By the marriage her husband became the ad-

ministrator, as he is responsible for her acts as administratrix; his appearance, therefore, is an appearance for her.

2. Although Mrs. Kavanaugh administered jointly with Connelly, and executed a joint bond with him, it is no error of which she can complain that the account has been stated separately. Although each may be bound to the distributees for the acts of the other, it is to her interest that the liability should be considered several. The objection is in effect that a judgment has not been rendered against her for the amount of the estate in the hands of Connelly.

3. The record of the recovery of the four slaves from Eli Lewis by the administrators was conclusive, and the court therefore properly rejected the testimony offered that the plaintiff in error purchased the slaves with his own monies. 1st, because it contradicts the record: 2d, because it is contrary to public policy to permit a title to be founded upon a fraud committed on the creditors of Eli Lewis: 3d, because the administrators of William Lewis had no authority to make such a compromise as is stated upon the record, even if it were proved that Eli Lewis had a valid claim upon the estate of William Lewis. But lastly, it is not shown that Eli Lewis had any claim whatever upon the estate of William Lewis.—Weir v. Davis & Humphries, 4 Ala. Rep. 442; Dearman v. Coffman, ib. 521; Duffee v. Buchanan, 8 ib. 27; Key v. Boyd, 10; ib. 154; Steele v. Knox, ib. 609; Fambro v. Gant, 12 ib. 298.

4. As it respects the charge against the administrators for the recovery from the representatives of Kavanaugh, I submit that the decision of the court is correct, because the administrators had no power to make the exchange of Jack for Little Bill, but should be held accountable to the distributees for his value, of which the recovery affords the best evidence. If this is not so it can only be upon the ground that by the exchange, the slave Jack became the property of the estate instead of Little Bill, and in that event, the plaintiff in error would be liable for his value if not produced for distribution, and for his hire since 1832, when the exchange was made. Thus in all probability the judgment is for too small a sum, and the error, if is one, is beneficial to the plaintiffs in error.

5. As to the last assignment of error, see 15 Ala. Rep. 335.

CHILTON, J.—We will examine the errors assigned in their order. 1. There was clearly no error in failing to have citation served on the wife. Upon the marriage of the administratrix, the husband becomes administrator in her right for his own safety, it is said, and he takes upon himself all the duties, and is entitled to all the privileges which belonged to the administratrix before the marriage.—2 Williams on Ex'rs, 633. He was then the proper representative of both. In chancery, it is well settled that process need not be served on the wife, unless the bill seeks to charge her in respect of her separate estate, and she has no such estate in assets as administratrix.—Daniel's Ch. Pr. 191; 1 Turn. & R. 96. We think a similar practice may well obtain in the Orphans' Court, since service of the citation upon the wife would be but mere matter of form.

2. Although the distributees would have the right to complain that the court proceeded to render separate judgments against the administrators who had entered into a joint bond, we think it very clear the administrators themselves, who made no objection to such judgments being rendered separately, instead of jointly against them, cannot be heard to complain. They have not been injured, because the judgments were rendered against them for less than the court should have awarded, and to entitle the plaintiffs in error to a reversal, they must show both error and injury. It was certainly beneficial to the plaintiffs in error that no judgment was rendered against them for the assets of the estate in the hands of Connelly. Bush v. Bradford, 15 Ala. Rep. 317. Were the distributees complaining, then the authorities cited by the counsel for the plaintiffs in error would apply, for it is settled by them, that when co-administrators enter into a joint bond, they stand as sureties for each other to the distributees, who are entitled to a joint judgment against them.—Little, et al. v. Knox, adm'r 15 Ala. Rep. 576; Little, et al. v. Heard, et ux. 16 ib. 360, and are jointly bound to protect their securities upon such bond, against the acts of either administrator.

3. Upon the trial in the Orphans' Court, the distributees produced and read the record of a judgment, rendered in favor of the administrators of said William Lewis deceased, against Eli Lewis, on the 4th Monday in October 1838, in an

action of detinue, brought to recover four slaves named in the pleadings, said judgment being in the usual form, for the recovery of the slaves, if to be had, and if not to be had, then their alternate value, which was assessed by the jury. Upon this judgment it appears execution issued, and was returned by the order of the administrators on the 16th of April 1839. To rid themselves of this charge, the plaintiffs in error offered to show that Eli Lewis had filed a bill in chancery on the 19th April 1834, against the administrators and heirs of said deceased, claiming an undivided half interest in all the property of which the deceased died seized, both real and personal, and offered to read to the court, the transcript of the bill, answers, exhibits and proof taken in the cause, from which transcript it appeared that the said complainant dismissed his bill; and in connection with this, they also offered to prove by James W. McClung, who was one of the solicitors of Eli Lewis, the complainant, and a practicing attorney of said court and familiar with the proof and situation of the cause, that he, believing it best for the interest of the estate, advised the parties to make a compromise of a certain character, which he afterwards learned from both the complainant and administrators had been made, but said witness could not remember the terms of the compromise. The plaintiffs in error also offered to prove by said witness, that he believed said Eli had a fair prospect of recovering half the estate, but as said Eli was largely insolvent, a recovery could not have been of much benefit to his own family, and he therefore thought it best for all parties that the compromise should be made. Kavanaugh then proposed proving by other witnesses, that the terms of said compromise were that Eli should dismiss his said chancery suit, and that in consideration thereof, said administrators should abandon all claim to the four slaves, who are named in the above recited judgment, and which were then in the possession of Eli, but which had been returned by the administrators in their inventory as a part of the assets belonging to the estate; also, that they should surrender the value of the hire of said slaves, and acquit said Eli of all debts due from him to said estate. It was further agreed, as a part of said compromise, that the judgment above refered to should go for the four slaves in favor of said administrators for the

purpose of protecting said property in the hands of said Eli from liability for his debts. Said Kavanaugh also offered to prove that he afterwards purchased said slaves from Eli Lewis with his individual funds. The court excluded the proof thus proposed to be made, upon the ground that the administrators could not condradict the record by parol evidence. Perhaps such exclusion could not be justified upon the reason assigned by the court, since the effect of the evidence was not to contradict the record of the judgment, but was consistent with it. But we think there is another ground which will fully sustain the action of the court. The object of the evidence was to show that although the judgment rendered in favor of the administrators who sued, as such, to recover the slaves, vested the recovery in them as administrators, and made the same assets in their hands, yet there was a trust existing in favor of the said Eli Lewis, which showed that the judgment in fact was not assets. This trust was, that the administrators should hold the recovery in trust for the sole benefit of Lewis to screen the property from his debts. We are aware of no principle of law which would authorize this, or enforce such trust. It could not be contended that Eli could in equity set up such trust to avoid the satisfaction or collection of the judgment. However fraudulent it might be against his creditors, it is obligatory as between the parties if they choose to insist on it, and as the administrators are entitled to it in *auter droit*, and as in the event of their going out of office and the appointment of a successor, the judgment would by operation of law, in virtue of his appointment go to him, the administrators, when the distributees insist on its collection, have no right to release or discharge the party from it, without rendering themselves liable for the amount. They cannot be heard to say any more than Eli Lewis, when sought to be charged with the judgment, we merely agreed to make it assets for the purpose of screening it from Lewis' creditors, and not for the purpose of distribution. No court will lend its aid thus to consummate or protect a title founded in fraud, but will treat the judgment as valid, and in good faith the property of the estate. Such doctrine is indispensable to the purity of the law, and is demanded by sound public policy. Since then, the legal title to the slaves, or their alter-

57

nate value, is in the administrators as assets, and the alleged trust is void, as contravening public policy, it is very clear the distributees had a right to charge the administrators who refused to enforce the judgment, and that the exclusion of the proof, which could not possibly have affected the result was not erroneous.—Duffee, adm'r v. Buchanan and Wife, 8 Ala. Rep. 27; Williams on Ex'rs 635.

These slaves were returned by the administrators as assets belonging to the estate, in the inventory which they filed in the Orphans' Court. They were in the possession of Eli Lewis, and a solemn judgment of the court is shown by which they recovered said property from Lewis, which property they now have in possession. We think, under such circumstances, it would be to introduce a new and very dangerous principle of decision to hold that the administrator may set up in himself as against the estate an adverse title, acquired from one in whose behalf he insists the judgment was a device to defraud creditors. We find no authority to sustain such a position and cannot give it our sanction.

4. In respect to the slave called Little Bill, we regard the decree of the Orphans' Court clearly defensible. The administrators were guilty of a conversion by permitting him to go into the possession of Kenan, and the recovery in their names against him ascertained the value of the boy—at least, the distributees were willing to take the recovery. The general rule is that the trustee can make no profit to himself out of the trust fund. If he deal in it, or exchange it for other property, it is for the *cestuis que trust* to elect whether they will hold him bound for the value of the trust effects so disposed of, or will take the property obtained in exchange, or profits of the negotiation. According to this principle, the distributees of this estate were not bound to accept the slave Jack, which the administrators received from Blevins in the place of Little Bill, but they could elect to charge the administrators with the value of the latter. This, they did, and in our judgment, the court very properly charged the plaintiffs in error with the amount recovered by them from Kenan as the price of Little Bill.

5. That the distributees at first sought to charge the ad-

ministrators with the hire of Jack, and which the administrators resisted, claiming him as their individual property, furnished no ground for refusing them afterwards the permission to elect to hold the plaintiffs in error responsible for Little Bill. It was the duty of the court to protect the interest of the minors in permitting the most advantagous election to be made. 15 Ala. Rep. 86.

The view we take of this case renders it unnecessary to go into the question as to the right of the administrators to compromise doubtful claims, or to dispose of the property of the estate by private arrangement, in the extinguishment of claims against it.

6. It is objected that no guardians *ad litem* were appointed for the infant distributees. Were they, or any one for them complaining, this would be erroneous, but for aught that appears the decree may be highly beneficial to them, and they would be injured by its reversal. The form of the decree in their favor " that they recover by their guardians" &c., was correct—See Fagan's adm'rs, v. Fagan's distributees, 15 Ala. Rep. 335.

We can perceive no error in the record available to the plaintiff in error, and the decree of the court below must be affirmed.

PARSONS, J., not sitting.