## RAMBO *vs.* WYATT'S ADM'R.

32 363<br>185 328

[DETINUE FOR SLAVES.]

1. *Validity of grant of administration de bonis non.*—It is essential to the validity of a grant of administration *de bonis non*, that the office should be vacant, at the time of the appointment, by the death, resignation or removal of the preceding administrator.

2. *Resignation of feme covert administratrix.*—A married woman, to whom letters of administration were granted while sole, may resign her administration in the mode prescribed by the statute, (Clay's Digest, 222, § 9,) without the concurrence of her husband; and her resignation necessarily terminates that of her husband.

3. *Sufficiency of verdict.*—A verdict in detinue, in these words: "We find all the issues for the plaintiff, and that the slaves named in the proceedings," [specifying them by name,] " are the property of plaintiff, and that the said slaves are in value worth as follows," &c.; " and as the plaintiff releases all damages for hire, we assess the value of said slaves, to-wit, $3,450, as damages for the plaintiff, to be discharged upon the delivery of said slaves by defendant to him,"—is substantially correct and proper in form.

4. *Judgment corrected and affirmed.*—In detinue, a judgment on verdict for the plaintiff, " that he recover of said defendant the said slaves," (naming them,) " and, on the failure of said defendant to deliver said slaves to plaintiff when said plaintiff demands them, then that said plaintiff have and recover of said defendant the said sum of $3,450, his damages so assessed by the jury,"—though not in the proper form, will be corrected on error, and affirmed.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by Thomas M. Williams, as the administrator *de bonis non* of the estate of Peter Wyatt, deceased, to recover certain slaves, to-wit, a negro woman named Maria, and her five children, which had belonged to said intestate in his life-time, and which the defendant claimed under a purchase, in 1845, from one Benjamin Mock, who derived title to them, in 1837, by a purchase from Mrs. Mary E. Wyatt, the widow and administratrix in chief of said intestate. The pleas were, "the general issue, the statute of limitations of six years, and *ne unques* administrator;" the last plea being interposed, by leave of the court, against the plaintiff's objection. It appear-

ed from the facts adduced in evidence on the trial, as to which there was no dispute, that plaintiff's intestate died in Lowndes county, the place of his residence, some time during the year 1833; that letters of administration on his estate were granted by the probate court of said county, in November, 1833, to Mrs. Mary E. Wyatt, the widow of said intestate, and one William N. Mock; that Mrs. Wyatt afterwards married one Thomas D. Armstrong, and, with her husband, removed to Louisiana; that no settlement of their administration was ever made by said administrator and administratrix, or either of them; that Mrs. Armstrong presented her written resignation to the court, but at what time does not appear; that the letters of administration granted to her and said William Mock were revoked by said probate court, at a regular term held on the 8th March, 1852, and letters of administration *de bonis non* were granted to the plaintiff at the same time; that these orders were made without notice to either Mrs. Armstrong or her husband, and after the death of said William N. Mock. The court charged the jury, "that, if they believed all the evidence in the case, they must find a verdict for the plaintiff;" to which charge the defendant excepted.

The value of the slaves was agreed on by consent, and, also, "that if the plaintiff recover them, then the verdict shall be for the above prices or valuation, to be discharged on the surrender and delivery of the said slaves to the plaintiff." The verdict and judgment were as follows: 'This day came the parties," &c., "and came a jury," &c., "who, on their oaths, say, 'We find all the issues for the plaintiff, and that the slaves named in the proceedings,'" [specifying them by name,] "'are the property of the plaintiff, as the administrator of Peter Wyatt, deceased; and that the said slaves are in value worth as follows,'" (specifying the agreed value of each;) "'and as the plaintiff releases all damages for hire, we assess the value of said slaves, to-wit, $3,450, as damages for the plaintiff, to be discharged upon the delivery of said slaves by the defendant to said plaintiff.' It is therefore considered by the court, that the plaintiff recover of said defend-

ant the said slaves," (naming them,) " and, on the failure of said defendant to deliver said slaves to said plaintiff when said plaintiff demands them, then that the said plaintiff have and recover of the said defendant, the sum of $3,450, his damages so assessed by the jury, over and above his costs and charges by him in this behalf expended."

The errors assigned are, the charge of the court, and the rendition of the final judgment.

BAINE & NESMITH, for appellant.

THOMAS WILLIAMS, *contra*.

WALKER, J.—The question of this appeal is, whether the administration *de bonis non* of the appellee, who was the plaintiff below, is valid. The solution of this question turns upon the point, whether the administration was vacant at the time of the appointment.—Matthews, adm'r, v. Douthitt and Wife, 27 Ala. 273. Of the two representatives first appointed, one was dead, and the other, being the widow of the deceased, had married, and, with her husband, removed from the State. There had never been any settlement of the estate ; and the *feme covert* administratrix, in writing, subscribed by her, but not by her husband, resigned the administration. The subsisting administration was, upon these facts, without notice, revoked; and the plaintiff was thereupon appointed administrator *de bonis non*.

This action of the court having occurred before the adoption of the Code, its validity must be tried by the pre-existing law.

The death of the administrator terminated his office. The remaining representatives were, a *feme covert* administratrix, and her husband, who intermarried with her after the commencement of the administration. Excluding from our view the other questions which have been argued, we proceed to consider whether the written resignation, delivered into the proper office, of the *feme covert* administratrix alone, not participated in by her husband, terminates the administration of herself and husband.

By a statute adopted in 1821, (Clay's Digest, 222, § 9,) it is enacted, "that any executor, executrix, administrator, or administratrix, may, by writing, by him or her subscribed, and delivered into the clerk's office, resign his or her authority; but, in such cases, he, she, or they, and his, her, or their securities, shall be bound for all the assets or effects which shall not have been duly administered or applied, or shall not be delivered to their successors respectively." This statute clearly gives to every administrator or administratrix the power to divest him or herself of the trust. It does not admit of an exception from its provisions of any one holding the office by appointment of the court. If a *feme*, who marries after her qualification, can, during the coverture, be correctly denominated administratrix, she has the power of resignation, conferred by the statute, and existing by virtue of it.

An administratrix, after her marriage, is incapable of doing any act of administration, which might be to the prejudice of her husband, without his concurrence. 2 Williams on Executors, ch. 4, 825, 826; Wentworth on Executors, 380; Wankford v. Wankford, 1 Salkeld, 299, 306; Adair v. Shaw, 1 Sch. & Lef. 266; Kavanaugh and Wife v. Thompson, 16 Ala. 817; Pistole v. Street, 5 Por. 64. This incapacity of the wife, and the capacity of the husband, to discharge all the offices of the administration, result from the liability of the husband for the acts of the wife. It does not result from the cessation of the wife's character as administratrix. The general remark in Kavanaugh v. Thompson, *supra*, that the husband "takes upon himself all the duties, and is entitled to all the privileges, which belonged to the administratrix before the marriage," does not convey the idea, that by the coverture the wife has ceased to be administratrix, or that the trust is suspended as to her during the coverture. Some incapacity is imposed upon her, while she is *sub potestate viri*, but she still remains administratrix. She is a necessary party in all suits for and against the administration. She is liable, after the termination of the coverture, for the *devastavits* committed by her husband during the coverture; and after the termination of the coverture

she has the same power and authority, which she had before its commencement.—2 Williams on Executors, 828, 1564; Adair v. Shaw, *supra*. These considerations show, that an administratrix retains her character of administratrix notwithstanding her marriage, and thus comes within the letter of the statute.

In an old case of Der Rosa v. De Pinna, reported in a note in 6 Eng. Ecc. R. 167, a *feme covert*, to whom administration had been decreed, was not allowed, on an appeal from the decree, to renounce the administration, to the prejudice of her husband who objected to it. By the English ecclesiastical law, there was not an unqualified right of renunciation or resignation of an administration. 1 Williams on Ex'rs, 484; McGowan v. Ward, 3 Yerger, 375; Washington v. Blunt, 8 Iredell's Equity, 253. The English ecclesiastical court could, therefore, exercise its power of allowing a renunciation by a *feme covert* in reference to the husband's wishes. The law here is different. There is here a right to resign. There is no qualification of that right, and the court is not clothed with authority to make its exercise dependent upon the husband's will.

It would be inconsistent with the spirit of the law, which prescribes the incapacity of a *feme covert*, to imply the disability of a married woman to resign her administration. The protection of the wife is one of the objects of the law in the imposition of her disabilities. The resignation of an administration is a means by which a wife could protect herself against irreparable loss by the misconduct of a husband, inducted into the administration by his intermarriage with her. To take away from her the right of resignation, which the statute gives, would, therefore, deprive her of a means of self-protection given by the statute. Her protection would not be consulted by implying a disability in her to resign. The wife's safety and protection will be less endangered by allowing her the exercise of her will in resigning an administration, than by leaving her without the means of ending her liability for her husband's misconduct.

For the reasons above set forth, we decide, that a *feme covert* administratrix has a right to resign her administra-

tion. Her resignation must, of necessity, terminate the administration of her husband, which exists only by virtue of her administration.

The verdict in this case is substantially correct, and proper in form, as a verdict in the action of detinue. The judgment, however, is not the appropriate one. The error in it is merely clerical, and must here be corrected. The judgment, being thus corrected, is affirmed.—See Code, § 3037; Jackson v. Shipman, 28 Ala. 488.