# Pinson, Adm'r *v*. Gilbert *et al.*

*Action for Money had and received.*

1. *Objection; when not error to overrule.*—When there is no evidence from which facts may be inferred, except a statement of them as reasons for making an objection, the action of the court below, in overruling it, will not be disturbed.

2. *Deed of separation; emancipation; statute of limitations.*—G., in a contract and deed of separation from his wife, made a declaration of trust as to two slaves, in favor of the children of the marriage. He was to hold the slaves for his own use for life, with power by sale or exchange to substitute others in their stead. Some years before emancipation he sold one of the slaves, not substituting any other in her stead. He died in 1870, and the *cestui que trust* brought an action, in 1871, against G.'s personal representative, to recover the money realized on the sale, as for so much money had and received to their use.

*Held:* 1. The action was well brought. 2. No right of action occurred until G.'s death, and the statute did not commence to run against the beneficiaries until then. 3. Emancipation of slaves did not release G. The slave converted did not then belong to him, and he lost nothing thereby. If he had substituted a slave in her place, emancipation would have released him from all liability.

APPEAL from Circuit Court of Sumter.

Tried before Hon. GEORGE H. CRAIG.

The appellees, Thomas and Eli Gilbert, sons of William Gilbert, deceased, brought this action against his administrator, to recover a sum of money had and received by said William for the use of plaintiff in the year 1847.

The material facts of the case may be thus stated : In the year 1843, Nancy Ann Speight, formerly Amason, then a widow, married said William Gilbert, and they lived together as husband and wife until November 14, 1845, when they separated. At this time Thomas had been born, and his

mother was pregnant with another child begotten by said William. A formal "contract and deed of separation" was drawn up and executed between the parties and a trustee. By the terms of this instrument certain slaves and other property, which had belonged to the wife before the marriage, were conveyed to a trustee for her use during life, and at her death, to go to Thomas, and the child then expected to be born. This child was born shortly afterwards, and is the co-plaintiff in the suit with said Thomas.

It was also agreed between the parties to the deed, that certain slaves, "Margaret, and Sukey," which said William owned in his own right, should "be held by him to his own use during life, and at his death go to said Thomas, and the child expected to be born," &c.; and that said William might, by "sale or purchase, or by swap," exchange said.slaves for others if they proved vicious, and "those substituted should stand and go, in all respects, as is provided for the negroes so displaced." This instrument also recited, that, in consideration of the premises, "said William Gilbert makes a declaration of trust, and declares and agrees that he does and will hold said negro slaves, Margaret and Sukey, . . . and'' such as shall be acquired in their place, in trust for the use of said Thomas, and such child as said Nancy Ann shall be delivered of during her present pregnancy, to, and to be divided among them, at the death of said William," &c.

About the year 1847 said William "traded off the negro Sukey for some mules;" the proof showing, however, that a. money price was fixed on the slave, and Gilbert received payment of the amount in a certain number of mules. He afterwards sold the mules and invested the money in a negro, whom he owned at the time of emancipation; but the testimony shows that he "did not hold Sukey, or any of the slaves afterwards purchased, in trust for his sons in place of Sukey, but held them as his own property."

William Gilbert died in 1870, and this action was commenced in August, 1871.

The court charged the jury, in substance, that if William Gilbert sold Sukey, and did not invest the proceeds as stipulated in the deed, it was an appropriation for which he was liable in this action; that the Statute of limitations would not run until his death; neither would interest be recoverable before that time—the death of said William being the period when the plaintiff's right of action accrued.

The defendant excepted to this charge, and requested several charges in writing; all of which the court refused,

[Pinson, Administrator v. Gilbert et al.]

and to which refusals exception was duly reserved. The charges thus requested, asserted in substance : *first,* that the claim was barred by the statute of limitations of three and six years; *second,* that the plaintiffs could not recover in this action, unless there had been a settlement of the trust; *third,* that the plaintiff could not recover, unless at the time Gilbert received the money, plaintiffs were entitled to the proceeds of the sale of Sukey, &c.; *fourth,* that a court of law had no jurisdiction of the case shown by the evidence, and the verdict must, therefore, be for the defendants.

Motion was made to suppress the deposition of a witness on grounds stated in the opinion, and which need not be here repeated, and exception reserved to the ruling of the court below on that point.

The charge given, the refusal to charge as requested, and the refusal to suppress the deposition, are now assigned as error.

COOKE & LITTLE.—The emancipation of the slaves, before the date when plaintiff's right to them accrued, put an end to the trust and discharged William Gilbert from all liability.—Perry on Trusts, § 921; 16 Ala. 414. An action at law will not lie against a trustee while the trust is still open and *unsettled.* A final account must be had and a balance struck before an action can be maintained.—Hill on Trustees, 518; Perry on Trusts, § 843. There is no proof that Gilbert received any money for the slaves. The sale or exchange was made for mules, and hence an action for *money* had and received will not lie.—6 Ala. 337. The claim was certainly barred. If there is any right to maintain the action, it arises, not from the failure or refusal to account for the trust, but from the conversion of the property. 8 Ala. 211.

SNEDICOR & COCKRELL, *contra.*—The ground alleged in support of the motion to suppress, was not shown to exist. 28 Ala. 408; 35 Ala. 79. The right of appellees to possession of the slaves, or the proceeds, did not accrue to appellees until the death of William Gilbert, and the statute of limitations did not commence to run until then.—14 Ala. 315. The legal as well as equitable right to the subject matter of the trust vested in the appellees at their father's death, and the right of action at law became complete at that date. 30 Ala. 152; 26 Ala. 213; 22 Ala. 198; 17 Ala. 636; 19 Ala. 747; 21 Ala. 458.

There is no proof of any re-investment; and hence any question as to that is abstract. At the time when slaves were emancipated, Gilbert was at fault; he had committed a conversion. Emancipation can not aid him. The slave had been converted before emancipation, and was not lost thereby.

STONE, J.—When the trial of this case was entered upon, "the defendant moved the court to suppress the deposition of Henry McDaniel, on the ground that said witness was alive, and lived within ten miles of the court-house, and that the cause for which it was taken does not exist, and that the defendant wishes to examine him orally on the stand. The court overruled the objection, and permitted said deposition to be read in evidence, and defendant excepted."

After the deposition was read, "defendant moved to exclude the testimony, on the ground that the witness was alive and in the jurisdiction of the court. The court refused to exclude the evidence, and defendant excepted."

The foregoing is all the record shows bearing on the question therein sought to be raised. It will be observed that, in each motion, the counsel stated the grounds on which it was made, but the record fails to show that the grounds stated exist *as facts*, unless such inference arise out of the language quoted above.

In the case of *Rupert & Cassety v. Elston*, 35 Ala. 79, objection was made to the competency of the witness, "because it appears upon his examination *voir dire* that he had indemnified defendant's testator against any loss arising from the said claim sued on." Other objections to the competency of the witness were stated, and the bill of exceptions contained this clause: "which objections the court severally overruled, and the plaintiffs excepted." We said: "The record does not inform us what testimony Mr. Dixon gave on his examination *voir dire*. From any thing which we can affirm, the court may have overruled the objection of the plaintiffs, because said ground of objection was not shown to exist in fact. The question would be analagous if the competency of the witness had been objected to, because it appeared upon his examination *voir dire* that the record of recovery in this suit would be evidence for the witness Dixon in another suit. This would not be an averment that the fact existed, but that plaintiffs had made such objection."

So, in this case, the record does not affirm that the state

[Pinson, Administrator v. Gilbert et al.]

of facts was shown to exist on which defendant based the objection to the reading of the deposition. It only shows that defendant made such objection. We can not presume the existence of any fact not shown, and make it the ground for reversing the judgment of the Circuit Court.—See 1 Brick. Dig. 775, § 29—781, §§ 118, 120. As we said in the case from which we have quoted, "there was not shown to be any evidence before the court to justify the decision invoked, [and] we feel bound to decide that the court did not, in this particular, commit an error."

The charges given and excepted to, each, assert substantially the same legal propositions. They correctly declare the law applicable to the case made by the evidence. There was no trust account to be settled requiring the exercise of chancery powers. The slave Sukey had been converted into money, and there is no evidence in the record that such money was re-invested by Mr. Gilbert in another slave, or slaves, to take the place of Sukey. The testimony tends to show that he did not, by any subsequent purchase, intend to put the slave thus bought, and hold him, subject to the trust under which he held Sukey. If slaves had not been emancipated, the present plaintiffs could not have recovered, by suit, any slave which Mr. Gilbert subsequently bought, for the plain and simple reason that we are not informed that he made a purchase which he intended should stand in the place of Sukey. He, then, received the proceeds of Sukey; kept such proceeds till his death, or converted them; and at his death—not till then—a right accrued to plaintiffs to have an account of the slave Sukey. Having converted her, without re-investing the money, Mr. Gilbert armed the plaintiffs with the right to waive this omission of duty, and to sue for the proceeds, as so much money had and received by him for their use.—*Kavanaugh v. Thompson*, 16 Ala. 817; *Hitchcock v. Lukins*, 8 Por. 333; *Vincent v. Rogers*, 30 Ala. 471; 1 Brick. Dig. 150, §§ 228, 229; *Ib.* 141–2, §§ 89, 90, 110, 111.

If Gilbert, under the power contained in the deed of separation, had exchanged Sukey for another slave, or with the proceeds of her sale had purchased another slave, and had received and held such substituted slave subject to the same trust under which he held Sukey, then the emancipation of such slave, by the act of the Government, would have relieved his estate from all liability over to his children in remainder. But he did not do so. He used or converted the money, and made no pretense of re-investment. He did not

[Williamson v. Harris.]

lose the money by the emancipation of the slaves; and his estate must be charged with it as still in hand.

In the several charges given and refused, the Circuit Court ruled substantially in accordance with the views above expressed, and the judgment is affirmed.