## SEARS *v.* ABRAMS.

WAREHOUSEMEN—STORAGE—CONVERSION.—A warehouseman receiving grain
on storage, and mixing it with other grain of the same nature and
quality also stored in his warehouse, in the usual course of business, is
not chargeable with a conversion by reason of such act alone.

IDEM.—In a suit in equity, brought by the mortgagee in a chattel mortgage
to enforce his lein on the mortgaged property in the hands of several
parties who have acquired possession since the mortgage lien attached
to the property, a personal decree against one of such parties for the
full value of the property based wholly on a mere technical conversion,
not occasioning any loss of the security, nor in any manner interfering
with the plaintiff's recourse upon it in the hands of another of said
parties, also a defendant in the suit, cannot be sustained. It is not
technical injury, but real loss, in respect of the security afforded by the
mortgage lien, caused by the wrongful act of a defendant, that deter-
mines the question of his personal liability in a suit of this character.

APPEAL from Polk County. The facts are stated in the opinion.

*Daly & Butler*, for appellant.

*W. H. Holmes*, for respondent.

By the Court, WATSON, C. J.:

This suit was brought by the respondent Jas. K. Sears, against J. B. Waver, B. F. McLench, J. E. Whitten, R. D. Phillips, The Salem Flouring Mills Co., and the appellant L. Abrams, to foreclose a chattel mortgage executed by said J. B. Waver to the respondent on January 1, 1880, and filed in the proper office February 10, 1880. The mortgage was given to secure the payment of a promissory note of the same date for $495 66, payable on or before October 1, 1880, with one per cent. per month interest from date, and containing the usual stipulation for reasonable attorney fees, in the event of suit or action being instituted to collect such note or any portion thereof, executed by Waver to the respondent. The property described in the mortgage consisted of two horses, a wagon, and "all of the two-thirds of all the grain, both wheat and oats, and hay," which at the time the mortgage was executed had been sown, and which should "be sown and grown" on a certain designated farm, then belonging to one E. C. Keyt.

In his complaint, the respondent charges that a large sum yet remains due and unpaid on his note, and that subsequently to the execution and recording of his mortgage, Waver sold all his interest in great portions of said property, in different lots and parcels, to his co-defendants respectively, and that "they now claim to be the owners thereof, or have disposed of or converted the same to their own use and benefit;" and that each took said property with notice of the rights of respondent. A demand and refusal as to each de-

fendant is also alleged. His prayer for relief is for a decree against Waver for the amount due on the note; and against the other defendants that they be required to disclose the portions of said property respectively received by them, and that the same be sold to satisfy the said decree and expenses of sale; and that all said parties be foreclosed of all rights or claims in or to said property; and if said defendants have converted any part of said property so that the same cannot be sold as above prayed for, that they be declared liable respectively for the value thereof, and the proceeds thereof applied to the satisfaction of the decree against Waver. There was no service upon or appearance by any of the defendants except The Salem Flouring Mills Co., and the appellant Abrams, so far as the record discloses. Abrams filed a general demurrer to the complaint, which was overruled. Afterwards both he and The Salem Flouring Mills Co. answered separately, denying all material averments in the complaint. The cause was then referred to a referee to take the testimony therein between the respondent and appellant, and report the facts found therefrom and the law arising upon such facts.

Substantially, the facts established by the evidence and reported by the referee, were that from the 22d of September to the 10th of October, 1880, Waver delivered to Abrams of the grain grown that season on the farm mentioned in the chattel mortgage, 196 bushels of oats of the value of $68 60, which Abrams used and disposed of on his own account; and 890 44-60 bushels of wheat of the value of $625 45, which Abrams received on deposit at his warehouse at Lincoln, Polk county, and for which at the time of delivery he gave Waver a receipt as follows:

"Lincoln, Oregon, October 9, 1880.
"Received of J. B. Waver 890 44-60 bushels of sacked

merchantable wheat, to be delivered on boat at Lincoln, to order of bearer, upon payment of 4 cents per bushel, the damage of water and fire excepted.

(Signed) "L. ABRAMS."

Shortly afterwards, this receipt was purchased by the Salem Flouring Mills Company, endorsed by J. B. Waver. On the 15th of October, 1880, after Abrams had received notice of the purchase of the receipt endorsed by Waver, the respondent made a demand upon Abrams personally for the possession of this wheat, at the same time informing him of his right thereto under said chattel mortgage. Abrams refused to accede to such demand on account of the transfer of such receipt to the Salem Flouring Mills Company, of which he had been duly notified, and afterwards delivered to said company the amount of wheat called for by said receipt and took the same up. When Abrams received the wheat for storage, he run the same through the cleaner and mixed it with other wheat in the warehouse, so that its specific identity was lost. The circuit court confirmed the report, and rendered a personal decree for the respondent against Abrams solely for $560, the amount due on said note, with costs of suit.

Appellant claims that the complaint does not state facts entitling the respondent to any relief in equity, and that the demurrer thereto should have been sustained. Prior to the act of October 24, 1866, entitled "An act to regulate the foreclosure of chattel mortgages," the jurisdiction of courts of equity over the foreclosure of such mortgages was undoubted. (Title IV, chap. 5, code of civil procedure.) But by that act, particular modes of foreclosure were provided, which both seem to be, and to have been designed to be, comprehensive enough to meet every conceivable case, where such foreclosure might become necessary, and among which the

only judicial proceeding provided for is an action at law. It is also declared that, "Whenever in any mortgage of goods and chattels the parties to such mortgage shall have provided the manner in which such mortgage may be foreclosed, such mortgage, upon breach of the conditions thereof, may be foreclosed in the manner therein provided and not otherwise." (Chap. 39, Mis. Laws, 688.)

In the case before us, the manner of foreclosure was provided in the mortgage itself, and did not involve any resort to judicial proceedings. The respondent, however, demanded the possession of the property while it was in appellant's hands, in order to foreclose in the manner stipulated in the mortgage, but was refused as already noticed. This brings the respondent's case, in this respect, squarely within the rule laid down by this court at its July term, 1879, in the case of *Jacobs* v. *McCalley*, reported in 8 Oregon, page 124. It was there held that the mortgagor's refusal to deliver up the mortgaged property after the condition is broken, to the mortgagee, so that the latter might proceed to foreclose in the particular mode provided in the mortgage, absolved him from any further necessity to proceed in that mode, and that he might then resort to a suit in equity to foreclose. Whatever doubts may exist as to the technical correctness of this construction, the rule laid down by the court cannot possibly be deemed a bad one practically, and we deem it incumbent on us to follow it. Nor is it at all clear that the equity jurisdiction could not be sustained upon other grounds arising from the facts stated in the complaint. But upon this point it is not necessary to express any decided opinion. Adherence to the rule laid down in *Jacobs* v. *McCalley* conclusively settles this point adversely to the appellant. But we think the circuit court erred in rendering a personal decree against the appellant for a

greater amount than $68 60, the value of the oats converted by him to his own use, and thus placed beyond the reach of the respondent.

The entire scope and purpose of the suit was to subject the mortgaged property or its proceeds, in the hands of any of the defendants, where it might be found, to the satisfaction of the amount due on the respondent's note, by virtue of his mortgage lien. No defendant was sought to be made personally liable unless he should be found to have converted some portion of the property, so that the remedy against it, or its proceeds in specie, was lost. And this we understand to be the true measure of equitable relief in such cases. (Pomeroy's Eq. Jur., secs. 1079 and 1080; *Pierson* v. *Gilbert*, 57 Ala., 35; *Rowe* v. *Bentley*, 29 Gratton, 756; *Leedom* v. *Lambert*, 80 Pa. St., 381.)

The mixture of the wheat received from Waver by the appellant, with other wheat of similar quality also stored in his warehouse, in the usual course of his business, and with Waver's assent, which must be implied under the circumstances, was not a conversion by the appellant, nor did it destroy the legal identity of the wheat so received and mingled. (Story on Bailments, sec. 40.) And such wheat was not thereby placed beyond the reach of the respondent's remedy founded on his mortgage lien. But if the appellant's refusal to deliver the wheat to respondent, on demand, and his subsequent delivery thereof to his co-defendant, the Salem Flouring Mills Co., upon the surrender of his receipt, should be deemed a technical conversion, which, in an action at law, would entitle the respondent to recover the full value of the property as damages, it does not follow that equity will afford him the same measure of relief. It is not the mere technical conversion of the security, but the possession of its proceeds, its loss or removal beyond the

respondent's reach, in a proceeding in equity, founded on his mortgage lien, that entitles him to equitable relief in the form of a personal decree against the defendants, who have occasioned such loss by intermeddling with its possession.

Now it appears plainly from the proofs in this case, that the Salem Flouring Mills Co. got this wheat with the same constructive notice the appellant had when he received it from Waver, of respondent's mortgage lien. And this company, a co-defendant in the suit, and charged in the complaint with the purchase of this wheat from Waver with notice of respondent's lien, is just as much bound to account for it to respondent, as appellant is for the oats converted by him to his own use. Some other objections have been urged by appellant, but we do not deem them important in the view we have taken of his position in the case. The decree must be modified in accordance with the foregoing views. The appellant will recover costs on the appeal, but each party must settle his own costs of suit in the circuit court.

Decree modified.