Argued by appellants and submitted on brief by respondents December 18, 1924, affirmed February 3, 1925.

## WALTER C. SMITH *v.* W. H. JOHNS et al.

(232 Pac. 786.)

**Sales—Harmless Misrepresentation Held not Ground for Rescission.**

1. Seller's misrepresentation that cattle were not encumbered at time of sale *held* not ground for rescission, where such encumbrance was removed before buyers' suit for rescission was instituted, and the cattle then belonged to buyers subject only to contract with seller, since buyers were not injured by misrepresentation.

**Fraud—Pecuniary Damage Essential.**

2. Fraud not resulting in pecuniary damage is not ground for exercise of remediable jurisdiction, equitable or legal.

**Sales—Seller's Statement as to When Dairy Cows Would Become "Fresh" Held Opinion, and not Ground for Rescission.**

3. Statement by seller of dairy cows as to time when cows would become "fresh" *held* not ground for rescission, being merely the statement of an opinion.

**Equity—Equity, Having Acquired Jurisdiction of Mortgaged Goods, Could Direct Sale Thereof, Notwithstanding Provision for Sale in Mortgage.**

4. Where buyers of cattle retained possession, and, in suit against seller and assignee of notes and chattel mortgage, sought injunction restraining such defendants from interfering with such possession,

———

1. See 12 R. C. L. 297.
2. See 12 R. C. L. 239.
3. See 12 R. C. L. 244.
4. See 10 R. C. L. 370.

the court, having acquired jurisdiction, could direct sale of the cattle because of buyers' default in payment of notes though mortgage provided method for disposition of cattle in event of sale by mortgagee.

See (1) 35 **Cyc.** 74, 137 (1926 Anno.), (2) 26 **C. J.** 1167. (3) 35 **Cyc.** 70. (4) 21 **C. J.** 134, 147.

From Klamath: D. V. KUYKENDALL, Judge.

Department 2.

This is an attempt, by a suit in equity, to rescind an alleged voidable contract for the sale of cattle, and to cancel certain written instruments evidencing the transaction involved; to establish a lien, and to enjoin the defendants from taking possession of the cattle.

Defendant A. W. Kite filed an answer and disclaimer. Defendant W. H. Johns denied the charges of fraud and pleaded authority to sell the cattle. Johns averred the transfer to defendant, The Montague Banking Company, of the notes, the chattel mortgage and the conditional sales contract involved herein, and, in his own behalf, assented to a rescission of the contract. The banking company denied plaintiffs' averment of fraud and alleged the right and authority of Johns to sell the cattle. The company prayed that the conditional sales contract be declared a chattel mortgage, and sought its foreclosure, together with the foreclosure of a separate chattel mortgage given by plaintiffs on a portion of the cattle.

From a decree denying plaintiffs' prayer for rescission and cancellation and granting the relief prayed for by the defendant banking company, the plaintiffs appeal.                    AFFIRMED.

For appellants there was a brief and oral argument by *Mr. J. H. Carnahan.*

For respondents there was a brief over the names of *Mr. R. C. Groesbeck* and *Mr. B. K. Collier*.

BROWN, J.—The plaintiffs assert, in effect, that the contract of sale is tainted with fraud because at the time of its execution the cattle were mortgaged; and, further, that certain of the cattle were not as represented, in that they were not suitable for dairy purposes.

In January, 1921, defendant W. H. Johns, by occupation a dairyman, was the owner of a herd of dairy cows and a number of beef cattle, which he had previously acquired while residing at Granada, Siskiyou County, California, and on which, as partial security for an indebtedness to defendant The Montague Banking Company of Montague, California, he had executed two chattel mortgages in favor of that company. In the fall of 1920, and with the consent of the banking company, Johns shipped the cattle to Klamath County, Oregon, establishing a dairy on what is known in the record as the "Libby" place, situate near Merrill, Klamath County, where he thereafter kept his herd. He thereupon executed another chattel mortgage in favor of the banking company, which was recorded in that county.

The plaintiffs are farmers residing in the vicinity of Merrill. They commenced negotiations for the purchase of those cattle from Johns on January 6, 1921. Prior to the execution of the contract, one of the plaintiffs visited the Libby place and inspected the cattle. On January 10, 1921, following this visit, plaintiffs purchased sixteen head of beef cattle, giving in payment therefor their promissory note for $786.65, secured by a chattel mortgage on the cattle. Plaintiffs likewise contracted with Johns for the pur-

113 Or.—23

chase of the dairy herd and executed promissory notes aggregating $3,117.50, in payment therefor. On the same day, this conditional sales contract for the sale of the dairy herd was reduced to writing and signed by the parties, and Johns executed to the plaintiffs a bill of sale for thirty-two head of dairy cows, nine calves, one bull, one cream separator, and four milk cans, which bill of sale represented the property to be free of all encumbrances, and that the seller was the owner of the property transferred. Both writings were placed in escrow with a bank at Merrill, the bill of sale to be delivered to plaintiffs when they had paid the promissory notes made and delivered to Johns for the purchase price of the dairy herd. Immediately following this transaction, Johns indorsed and transferred the above-mentioned notes to The Montague Banking Company, in satisfaction of his own notes held by that company, and which had been secured by chattel mortgage upon the cattle sold by Johns to plaintiffs.

The representatives of the bank testified that, at the time Johns shipped the cattle from California to Oregon they authorized him to sell the cattle; that the bank had confirmed the sale made by Johns to the plaintiffs, and that the sale was made with their permission; that they had no lien against the cattle on account of Johns' obligations, and that the notes for which the cattle were held as security prior to their sale to plaintiffs had been paid by Johns.

1. Of course, under many conditions, the existence of an encumbrance on property constitutes ground for the rescission of a sale thereof, or for damages. But the evidence contained in this record does not disclose that kind of a case.

Were we to concede that Johns deceived the plain-tiffs in the matter of his ownership of the cattle, there is no testimony showing or tending to show that the plaintiffs sustained any injury thereby. When this suit was instituted, the cattle belonged to the plaintiffs, subject only to the contract and obligations entered into by themselves.

2. It is a well-established rule of law that—

"Fraud without resulting in pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal." 2 Pomeroy's Equity Jurisprudence (3 ed.), § 898.

Without injury there is no basis for a damage suit. The oft-expressed formula that a litigant cannot recover damages unless he has suffered some injury was approved by this court in *Martin .v. Moreland,* 93 Or. 61 (174 Pac. 722, 180 Pac. 933).

"The rule is often stated that five things are essential elements of a fraud or deceit sufficient to warrant an action for deceit or the rescission of a contract, which are (1) a trick, device, or representation, (2) its false or fraudulent character, (3) scienter, that is, knowledge or conscious purpose on the part of one practicing it, (4) deception, delusion, or misleading of the other party, and (5) resulting injury to such other party. But this enumeration is not quite exhaustive. There must also be an intention to deceive or delude, or an intention that the fraud practiced shall influence the action of the other party, and there must be the fact that it did influence him and induce him to enter into the contract or obligation. And, further, it is necessary that the fraud, artifice, or representation, should have been a material inducement to the contract. 'If the fraud be such that, had it not been practiced, the contract could not have been made or the transaction completed, then it is material to it; but if it be made probable that the same thing would have been done

if the fraud had not been practiced, it cannot be deemed material.' " 1 Black on Rescission and Cancellation, § 24.

It is contended that the plaintiffs were deceived in reference to the fitness of the dairy cows for the dairy business in that they gave less milk than the seller represented that they would give.

The testimony shows that, at the time the cows were purchased, they were in charge of a dairyman, who housed them well in a suitable dairy barn, fed them as dairy cows should be fed, and cared for them in a proper manner, and that he was receiving generous returns therefor; further, that after the plaintiffs bought the cows and took them away, notwithstanding that it was in the midst of winter, they were inadequately housed, fed, and cared for, which naturally resulted in a decrease of milk daily.

3. Plaintiffs also claimed that Johns made a misrepresentation to them as to the time when the cows would become "fresh."

The law says:

"A fraudulent 'representation,' such as will justify the rescission of a contract or the cancellation of a written instrument, must be a direct and positive assertion of a material fact, and not a statement which is put forward merely as the judgment, estimate, or opinion of the party making it, or a statement which, from the nature of the case, can be nothing more than an opinion. This rule rests upon several considerations. In the first place, it is neither fair nor logical to presume that a person, entering into a business transaction of any importance, would place his reliance upon a statement which he knows is nothing more than the opinion of the other party. In the next place, it would not accord with justice to impose the penalties of fraud upon one merely because his opinion or judgment proves to

have been mistaken. If he undertakes to make positive assertions in regard to matters of fact, he may be presumed to know that he will be held responsible; and, if he willfully misstates the facts with a fraudulent intention, there should clearly be a remedy for the party defrauded. But mere opinions are too speculative and unsubstantial to be visited with such consequences.'' 1 Black on Rescission and Cancellation, § 76.

The fact is that most of the cows did freshen.

The case of *Ziegler* v. *Stinson* (Or.), 224 Pac. 641, is much in point here. The pleadings in the case, which arose out of the exchange of real property in Portland for a dairy farm in Clatsop County, sought a rescission of the contract on account of partial failure of the consideration. In rendering the decision, Mr. Justice RAND, speaking for the court, wrote, at page 645:

''The fact that some of the stock and farm utensils on the place were subject to the lien of a chattel mortgage is at most a partial failure of consideration for which compensation can be made in damages and which accordingly does not discharge the entire contract. The rule is stated as follows: 'A partial failure of consideration does not operate as a discharge of the entire contract if compensation for such breach can be made by awarding damages to the adversary party and if the performance which he has received, together with such award of damages, will do substantial justice.' 5 Page on Contracts (2 ed.), § 2982.''

4. The mortgage on the beef cattle provided a method for the disposition of the mortgaged property in the event of a sale by the mortgagee; and, because the cattle were sold in accordance with the decree of the court, the plaintiffs claim that error was committed. But, in the case at bar, the plain-

tiffs retained possession of the property and sought to have the defendants enjoined from interference with such possession. Among other things, they prayed for judgment and decree:

"That the defendants, and each and all of them, and all persons acting by and under their authority, their servants, agents and employees, be restrained and enjoined from further incumbering the title of said property; and that they be forever restrained and enjoined from in any way or manner interfering with any of the said cattle or said cream separator."

The plaintiffs, by instituting this suit, invoked the remedial power of a court of equity. The court having acquired jurisdiction, the defendants rely upon the well-recognized doctrine of equity jurisprudence that was expressed by this court in *Templeton* v. *Bockler,* 73 Or. 494, 509 (144 Pac. 405, 409), wherein Mr. Justice RAMSEY wrote:

"A court of equity which has obtained jurisdiction of a controversy on any ground or for any purpose will retain such jurisdiction for the administering of complete relief and doing entire justice with respect to the subject mater of the dispute. By virtue of this rule, a court of equity, when its jurisdiction has been invoked for any equitable purpose, will proceed to determine any other equities existing between the parties, connected with the main subject of the suit, and grant all relief necessary to an entire adjustment of such subject, provided it be authorized by the pleadings (citations)."

See, also, *Jacobs* v. *McCalley,* 8 Or. 124; *Sears* v. *Abrams,* 10 Or. 499.

The contract invoked in this lawsuit proved to be an unfortunate one for the plaintiffs, but the record herein does not empower us to relieve them from the consequences of their own obligations.

This case is affirmed, without costs to either party in this court.                                    AFFIRMED.

McBRIDE, C. J., and BEAN and COSHOW, JJ., concur.