# Potts *v.* Coleman.

## *Statutory Real Action.*

1. *Adverse possession; when vendee of lands does not hold.*—The possession of the vendee of lands, who holds under an executory contract of sale, is not adverse to his vendor, until the purchase-money is paid, or until, by the terms of the contract, he is entitled to demand a conveyance of the legal title.

2. *Estoppel; vendee of lands holding under executory contract estopped from denying vendor's title.*—The vendee of lands, who holds possession under an executory contract of sale, and all who derive possession from him, are estopped from denying the title of the vendor.

3. *Statute of limitations; when operative in favor of vendee of lands under executory contract of sale.*—After payment of the purchase-money of lands, the possession of a vendee, holding under an executory contract of sale, is antagonistic to his vendor, and if held continuously for the prescribed statutory period, without any recognition of, or any subordination to, the legal title of the vendor, his right of entry or of action is barred.

4. *Same; when not operative in favor of vendee under executory contract.*—Until the expiration of the period prescribed by the statute of limitations, a vendee in possession of lands under an executory contract of sale, and those who claim under him, have only an equity, which will not bar an action of ejectment, or the statutory real action.

5. *Purchase-money; when evidence of payment is admissible in ejectment by vendor against his vendee.*—In ejectment by the vendor, or his heirs, against his vendee, or those claiming under him, who hold possession under an executory contract of sale, evidence of the payment of the purchase-money is irrelevant, unless the vendee, or those claiming under him, have been in continuous possession of the lands for the period prescribed by the statute of limitations, (ten years), as a bar to the action, after such payment.

6 *Possession of lands; evidence of title prevails over subsequent possession.* The quiet, peaceable possession of lands, for a definite period, under claim of title, and accompanied by acts of ownership, is *prima facie* evidence of a legal title, and must prevail, at law, over a subsequent possession, not shown to be under a superior legal title.

7. *Same: character of, when acquired as an advancement by parol.*—When a father puts his son in possession of land, intending it as a gift or advancement,

[Potts v. Coleman.]

the intention resting only in parol, a mere tenancy at will is created; and such possession can not become adverse, except by a dissolution of the tenancy, and an open, clear, positive, continuous disavowal of the title of the father, and the assertion of a hostile title which is brought to his knowledge.

8. *Adverse possesson; court pronounces on facts constituting.*—The *onus* is on one who seeks protection as an adverse possessor, to show a hostile possession, but the court pronounces, as matter of law, the facts which enter into, and constitute such a possession.

9. *Same; what characterizes claim of title constituting.*—The claim of title, which is an indispensable element of adverse possession, has in it nothing of stealthiness, nor is it elastic, or flexible; there must be publicity, continuity, and good faith in its assertion, leaving no room for doubt by the person against whom it is asserted, that his title is disputed, and a hostile title asserted.

10. *Promissory note; possession of by maker evidence of payment.*—The possession of a promissory note by the maker, or one who succeeds to his rights, or estate, tends to show that it has been paid, or that such person has acquired the beneficial ownership of it, but the presumption may be repelled by evidence that the possession was acquired without payment, and evidence that another note of the same tenor was substituted for it, is admissible.

APPEAL from Talladega Circuit Court.

Tried before Hon. JOHN HENDERSON.

This was a statutory real action, brought by Summer A. Potts, I. Hudson, F. G. Hudson, and W. E. Hudson, against B. W. and T. H. Coleman, and F. A. Butt. The suit was commenced on May 1st, 1872. On the trial it appeared, that in 1845 Isaac Hudson was in possession of the land in controversy, exercising acts of ownership and control over it, clearing and cultivating it, and building and occupying houses on it. Edward M. Hudson, who was the only child of Isaac Hudson, went into the possession of the lands in controversy in 1849, and cultivated them until 1852, when he moved to another place, which his father had purchased for him, because he preferred it to the lands sued for, and he then sold the latter tract to J. M. Roberts. He sold the lands on credit, taking notes for the payment of the purchase-money, and giving a bond to make titles to the land on its payment. Two or three years afterward Roberts sold the land to Jos. H. Bradford and B. A. Smoot, who assumed the payment of the purchase-money due on the lands. Smoot occupied the land for two or three years, and then released his interest in them to Bradford, who sold to H. W. Coleman and F. A. Butt. H. W. Coleman died before the commencement of this suit, leaving two heirs, B. W. and T. H. Coleman, who claim his interest in the said lands, in this suit. W. H. Coleman and F. A. Butt were in possession of the lands at the death of the former. Isaac Hudson died intestate on March 13, 1865, and E. M. Hudson died intestate on Oct. 23, 1861, leaving the plaintiffs his heirs. The defendants proved the execution of an instrument purporting to be a power of attorney made by Isaac Hudson to Marcus W. Duncan, au-

[Potts v. Coleman.]

thorizing him to convey the title to the lands to H. W. Coleman, and F. A. Butt, on payment by them to Duncan, of a note for $5,000, made by J. M. Roberts on Oct. 25, 1852, payable to E. M. Hudson. This power recites that Duncan is appointed attorney for Isaac Hudson, and empowers him to make a deed to H. W. Coleman, and F. A. Butt in my (Isaac Hudson's) name, conveying the lands in controversy, and continues as follows: "They being the lands sold by E. M. Hudson to said Roberts in 1852. By this power of attorney, it is intended to confer upon the said attorney Duncan, as ample power to execute warranty title in fee simple to the above lands, as I myself have. The said title to be made whenever the said parties pay the said Duncan a certain promissory note for $5,000, made by J. M. Roberts on October 25th, 1852, payable to E. M. Hudson on January 1, 1863, with interest from January 1, 1860; the interest on said note having been paid up to the last named date. The defendants then read this power of attorney in evidence to the jury. They then proved the execution of the following receipt: "27th December, 1859. Received of H. W. Coleman and F. A. Butt, four hundred dollars, in payment of the interest for 1859, on J. M. Roberts' note, made to E. M. Hudson for $5,000. Isaac Hudson." The plaintiffs objected to the reading of the power of attorney in evidence, but the court overruled the objection, and plaintiffs excepted. The defendants then proved the genuineness of the signature of J. M. Roberts to the following note: "On the first day of January, 1863, I promise to pay Edward M. Hudson, or order, five thousand dollars, with interest from January 1st, 1854, for value received, 25th October, 1852; the interest to be paid annually. J. M. Roberts." The defendants then offered evidence showing that this note was found among the papers of H. W. Coleman, after his death, and offered to read the note in evidence. The plaintiffs objected to this note as evidence in the case, but the court overruled the objection, and plaintiffs excepted. Plaintiffs then proved that the following writing, or sealed note, was in the hand-writing of Marcus W. Duncan, who was the person named in the power of attorney, mentioned above; that said Duncan died in 1863; and that said note was found among the papers of Isaac Hudson, after his death. Said note is in the following words: "$5,000. We obligate ourselves to pay to Isaac Hudson the sum of five thousand dollars by the first day of January, 1863, with interest from the first day of January, 1859, the interest to be paid January 1, 1860, and 1st January, 1861, and 1st January, 1862, and 1st January, 1863: As witness our hands and seals, this 1st November, 1859. H. W.

Coleman, F. Alston Butt." The defendants objected to the reading of this note as evidence, and the court having sustained the objection, plaintiffs excepted. The court charged the jury, *ex mero motu*, "that if they believed from the evidence that H. W. Coleman and F. A. Butt, or either of them, had paid the note given by J. M. Roberts to E. M. Hudson for $5,000, and that said note was given for the purchase-money of the lands in controversy, and was the last payment, and all that was due on said land, then the jury should find for the defendants. The plaintiffs excepted to the action of the court in giving this charge. There was a verdict for the defendants. The rulings of the court on the evidence, and the giving of the charges, are assigned as error.

JOHN T. HEFLIN, for appellant.—The law presumes that Isaac Hudson, who was in possession of the land, owned it, and no conveyance appearing from him to E. M. Hudson, it is presumed that the latter holds in subordination to the title of Isaac Hudson.—*Badger v. Lyon*, 7 Ala. 564 ; *McCall v. Pryor*, 17 Ala. 533 ; *Smith v. Lorillard*, 10 John. 339 ; *Jackson v. Sharp*, 9 John. 163 ; *Wickham v. Conklin*, 8 John. 223; *Jackson v. Thomas*, 16 John. 292 ; *Cox v. Davis*, 17 Ala. 714 ; *Russell v. Erwin's Adm'r*, 33 Ala. 44; *Anderson v. McLear*, 56 Ala. 625. Even if the land was an advancement by Isaac Hudson to his son, E. M. Hudson, the title did not pass. 12 Ala. 124 ; 19 Ala. 398 ; 23 Ala. 649. The evidence shows that the sale by Edward Hudson to Roberts was treated by E. M. Hudson and Isaac Hudson as a sale of the property of the latter. Under the view of the case, which was taken by the Circuit Judge, the note for $5,000 should have gone to the jury to enable them to decide whether the purchase-money had been paid, but the receipt for $400 from Coleman and Butt, was not evidence, because Roberts had only a bond for title, and the payment of the purchase-money could not vest him with such a title as would enable him to defend against this action.—*Nickels v. Harkins*, 15 Ala. 619 ; 17 Ala. 749 ; 22 Ala. 207. The power of attorney to Duncan, which was introduced by the defendants, shows that the purchase-money of the land was not paid on the 30th of December, 1859. Hence, deducting the time elapsing from January 11, 1861, to September 25, 1865, (during which the statute of limitations did not run), the suit was not barred by the statute of limitations. But the possession of the defendants was not adverse, being acquired under a bond for title. 22 Ala. 207 ; 36 Ala. 308. Payment of the purchase-money is no defense to an action of ejectment, and the charge of the court asserting this proposition is erroneous.—*Moody v.*

*Farr's Lessee*, 33 Miss. 192 ; 15 Ala. 619 ; *Ib*. 412 ; 33 Ala. 91 ; 13 Ala. 50 ; *Kelly v. Hendricks*, 57 Ala. 183. The legal title to the land is in the plaintiffs by descent.—19 Ala. 188.

TAUL BRADFORD, for appellees.—By the sale of the land to Roberts, E. M. Hudson repudiated the title thereto, as far as concerns the appellees, and an adverse possession began at the date of that sale in 1852. Neither Roberts, nor any one holding under him, subsequently recognized the title of Isaac Hudson. Thus, the statute of limitations had effected a bar when Isaac Hudson died, and hence, plaintiffs, who could only maintain this suit as his heirs, can not recover. The rulings of the court on the question of payment did the appellants no injury. If this action had been commenced after E. M. Hudson died, and before Isaac Hudson's death, then the heirs of E. M. Hudson could not have recovered if the purchase-money had been paid.—*Oliver v. Adams*, 50 Ala. The statute of limitations had barred the action as to Isaac Hudson's heirs, and the payment of the purchase-money to E. M. Hudson, who sold the land and who held nothing but possession, prevented a recovery by his heirs. Appellees insist, that under the statutes of Alabama, the vendor of land has no legal right to the possession of such land, as against his vendee, who has paid for them.

BRICKELL, C. J.—1. The possession of lands under an executory contract of purchase, is not adverse to the vendor, so long as the purchase-money is unpaid, or until by the terms of the agreement, the vendee is entitled to demand of the vendor a conveyance of the legal estate.—*Seabury v. Stewart*, 22 Ala. 207; *McQueen v. Ivey*, 56 Ala. 308 ; *Ormond v. Martin*, 37 Ala. 598. The vendee, though not strictly a tenant of the vendor, and though the technical relation of landlord and tenant is not created, is estopped from denying the title of the vendor, upon principle and reasoning like that which estops the tenant from disputing the title of the landlord ; and the estoppel applies to whoever may acquire possession from the vendee.—*Jackson v. Harden*, 4 Johns. 202 ; *Jackson v. Barb*, *ib*. 220 ; *Jackson v. Walker*, 7 Cowen, 643 ; *Jackson v. Spear*, 7 Wend. 403 ; *Russell v. Erwin*, 38 Ala. 44.

We do not, therefore, apprehend that it is at all material in this case, to inquire whether the immediate ancestor of the appellants had the legal title in the premises in controversy, or whether the title resided in his father, Isaac Hudson. The sale by Edward M., to Roberts, from whom the appellees derived possession mediately, was executory. No conveyance

of the legal title was to be executed until the final payment of the purchase-money in 1863; and until then, possession, whether continuous in Roberts, or transferred to others, was not adverse; and of the title of the vendor there could be no dispute. There could be no pretense of payment in full of the purchase-money, at any earlier period than some time subsequent to the payment of the annual interest on Roberts' note, on December 27, 1859. Deducting the period of the war, during which the operation of the statute of limitations was suspended, ten years had not elapsed from any time, at which payment of the purchase-money could be claimed, when this suit was commenced. *After payment* the parties in possession could not have more than a perfect equity. Having that equity, it is presumed the possession is antagonistic to the vendor, because all duty to him has been performed, and if the possession is continuous for the statutory period, without some recognition of or subordination to the legal estate of the vendor, his right of entry, or of action, is barred. But until the expiration of the statutory period, the vendee, or those claiming under him, have but an equity, which can not be interposed to bar an action of ejectment, or the statutory real action. In either action, that of ejectment, or the statutory real action, while the plaintiff must recover only on the strength of a legal title, when he shows such a title the defendants can not dispute, asserted within the period prescribed by the statute of limitations, he is entitled to recover, whatever may be the equities of the parties, unless the jurisdiction of courts of law and of equity, are blended and confused, and transferred from the one or the other, at the mere caprice of parties, or to meet the varying exigencies of particular cases. The radical error pervading all the rulings of the Circuit Court, is that it permitted to be drawn in question the payment of Roberts' note for the purchase-money, which was wholly impertinent, immaterial, and without its jurisdiction. The fact could only have been material, if there had been subsequent to the payment, a continuous possession, under claim of title, for a period of ten years, during which the statute of limitations was operative. 1 Brick. Dig. 627, §§ 33-40. The error led to the admission of evidence of the payment of interest on Robert's note for 1859, and to proof of the fact that his note was found in possession of Coleman, neither of which facts, was proper evidence in this cause.

2. The quiet, peaceable possession of lands, for a distinct, marked period of time, attended by a claim of title and by acts of ownership, is *prima facie* evidence that the legal estate is in the possessor, and the possession will prevail over a

[Potts v. Coleman.]

subsequent possession not shown to be under a superior legal title. The prior, will prevail over a subsequent possession, however hostile, not continued for the period prescribed by the statute of limitations to bar an entry, or an action to recover possession, because in itself, and of itself, it is evidence of prior right and title, which must remain good, until there is other evidence than mere possession of a superior title. The peaceable, continuous possession of Isaac Hudson, of the premises in controversy, from 1845 to 1849, under claim of title, accompanied by acts of ownership, clearing, improving, and cultivating them, is more consistent with the presumption that he had the full legal estate, than that he was a mere trespasser, or was holding in subordination to the title of another. The presumption strengthens, and for all the purposes of this case, becomes conclusive, in the absence of evidence of a superior title, when it is shown that the possession terminated only when he voluntarily transferred it to his son, and there has been since no other possession hostile to it.

The possession of the son was merely permissive, and was not hostile, but friendly and in strict subordination to the title of the father. The original intention may have been a gift, or an advancement of the lands to the son, and if that be true, the intention resting only in parol, a mere tenancy at will was created. Such a tenancy has in it no element of hostility to the title of the true owner, which is an indispensable ingredient of an adverse possession. Possession taken under it, could only be rendered adverse by a dissolution of the tenancy—by an open, clear, positive, continuous disclaimer, and disavowal of the title of the party from whom it is derived, and the assertion of a hostile title brought to his knowledge.—*Collins v. Johnson*, 57 Ala. 304. Adverse possession rests in the intention of the possessor—as is sometimes said, "the intention guides the entry, and fixes its character."—*Herbert v. Hanrick*, 16 Ala. 595. It is manifest from the evidence, that the son never intended the assertion of a title hostile to that of the father; nor is there any room for the imputation of such an intention to any subsequent possessor of the premises. The sale to Roberts was doubtless with the consent of the father, and to meet the wishes and convenience of the son. Coleman and Butt, the last and present possessors of the premises, recognized distinctly the title of the father, and that their possession was subordinate to it, and that it was his title, they contemplated acquiring, when to his agent, they made payment of the interest for 1859, on Roberts' note to the son. A more distinct recognition, was the substitution of their own note for that of

Roberts, which was shown, when they produced Roberts' note, and the appellants offered their note, the body of which was written by the agent of the father, payable to the father, for the exact sum of the purchase-money, payable at the same time Roberts' note was payable, and stipulating to pay the interest annually, as the interest had been paid on Roberts' note. The power of attorney from the father, it seems, found its way into the possession of Coleman and Butt, the last and present possessors, and one of its stipulations is, that the agent and attorney shall convey the premises in the name and on behalf of the father, when Roberts' note to the son for the purchase-money was paid; and it recites the fact that interest on that note had been paid to January 1st, 1860, corresponding with the receipt for the interest for 1859, given by the agent and attorney, Duncan, which the appellees produced. While on the party claiming protection as an adverse possessor, lies the burden of proving a hostile possession, the court as matter of law pronounces the facts which must enter into and characterize such a possession. In the presence of the distinct recognition of the title of Isaac Hudson, shown in evidence, the court ought not to have hesitated to pronounce the appellees were holding in subordination to it. Nor ought there to have been hesitation in pronouncing that the appellees were estopped from denying the title of the son—they were his vendees, entering into possession under him, and proposing to acquire title, by converting themselves into trespassers, enabling themselves, as it has been not too strongly said, "to steal the title of another, by professing to hold under it."—*Kirk v. Smith,* 9 Wheat. 288. The claim of title which must enter into and is the characteristic of an adverse possession, has in it no element of stealthiness, nor is it elastic or flexible. There must be publicity, continuity, and good faith in its assertion, leaving to the party in whom the title may reside, or from whom the possession was derived, no room for doubt, that all friendly relations are dissolved, that his title is not recognized, but disputed, and a hostile title asserted. The appellants are the heirs of Edward M., and of Isaac Hudson respectively, and it is unimportant whether a right of recovery is asserted by them in the one, or the other capacity. If they claim as heirs of Edward M., the appellees standing in the relation of his vendees, or entering and claiming under his vendee, could not dispute his title. Or, if as heirs of Isaac, there is sufficient evidence that the legal estate resided in him, and that the appellees and those under whom they claim have been holding in recognition, and in subordination to his title.

[King v. Reynolds.]

3. We have said that it was erroneous, in this action, to enter on any inquiry whether the purchase-money of the lands had been paid. If the inquiry had been material, Coleman's possession of Roberts' note, it may be, would have been a circumstance tending to show its payment, or that he had acquired the beneficial ownership of it. It was, however, only a circumstance from which such a presumption could have been raised, open to explanation, and subject to be repelled by evidence that without payment the possession had been acquired.—1 Green. Ev. § 38; 2 Whart. Ev. § 1362. The note made by Coleman and Butt, the body of which was in the handwriting of Duncan, the agent and attorney in fact of Isaac Hudson, empowered to make titles to the lands, on the payment of Roberts' note, and to whom Coleman and Butt had paid the interest for 1859, on that note, was admissible for the purpose of negativing the presumption arising from Coleman's possession of the latter note. It was for the same amount, payable at the same time as Roberts' note, with the interest payable annually, as the interest on that note had been paid. The reasonable inference was that it had been substituted for Roberts' note, which Coleman and Butt must have paid, or caused to be paid, before they could obtain title. Its consideration, like the consideration of Roberts' note, was the. purchase-money of the lands. The debt was the same, though the debtors were changed, and Coleman and Butt stood in Roberts' place, vendees in possession under an executory contract of purchase.—*Conner v. Banks,* 18 Ala. 42.

In all of its rulings the Circuit Court was in error, and the judgment must be reversed and the cause remanded.