# Morgan *v.* Casey, Adm'r.

### Statutory Real Action in the Nature of Ejectment.

1. *Administration de bonis non; presumption in favor of its validity.*
While it is true that a grant of administration *de bonis non*, when there
is no vacancy in the administration, is void, yet the rule is well settled
that, on collateral attack, it will be presumed, from the exercise by the
probate court of the power to appoint an administrator *de bonis non*, that
a vacancy did exist, unless the contrary affirmatively appears.

2. *Ejectment by administrator to recover lands for distribution; what no
defense.*—An administrator having authority under the statute to sell
lands for distribution as well as for the payment of debts, he can main-
tain ejectment against strangers holding adversely to himself and the
heirs, to recover lands of his intestate, as well for distribution as for the
payment of debts; and hence, it is no defense to such action, that all the
debts have been paid, or are barred by the lapse of time.

3. *Ejectment by administrator de bonis non to recover lands sold by his*

[Morgan v. Casey, Adm'r.]

*predecessor, but not conveyed; payment of purchase-money and distribution no defense.*—To an action of ejectment, brought by an administrator *de bonis non* to recover lands which had been sold by his predecessor under an order of the probate court, but of which no conveyance had been executed to the purchaser, the fact that the purchase-money had been paid to, and distributed among the heirs, by his predecessor, is no defense, although the recovery is sought for the purpose of distribution.

4. *Statute of limitations; when possession of lands is and is not presumed to be adverse.*—Before the payment of the purchase-money for lands sold by an administrator or executor under an order of the probate court, the presumption is, that the purchaser does not hold adversely to the heirs, but in subordination to, and in continuous recognition of their title; but after the payment of the purchase-money, he then having a perfect equity, and being no longer under the obligation of pecuniary duty to them, his possession is presumed to be hostile to the heirs, and, if continued, without interruption, for ten years, during which the statute of limitations is operative, it will ripen into a good title.

5. *Same; suspension of, during the war.*—It is the settled rule in this State, that, in computing the time necessary to create the bar of the statute of limitations, the period elapsing between the 11th day of January, 1861, and the 21st day of September, 1865, must be excluded on account of the war.

APPEAL from Cherokee Circuit Court.

Tried before Hon. LeRoy F. Box.

This was a statutory real action in the nature of ejectment, brought by John T. Casey and Z. T. Acker, as the administrators *de bonis non*, with the will annexed, of Thomas White, deceased, against Thomas Morgan and Looney Sanford; and was commenced on 20th December, 1875. The pleas found in the record are, in substance: (1) *Ne unques* administrators; (2) the general issue; (3) the statute of limitations of ten years; and (4) "that the land claimed was sold by the executors of the last will and testament of plaintiffs' testator, and the heirs received their distributive shares thereof in full, and receipted in full therefor." What disposition was made of these pleas, whether demurred or replied to, is not shown by the record. The cause was tried at the spring term, 1882, the trial resulting in a verdict and judgment for the plaintiffs.

The facts disclosed by the evidence, necessary to an understanding of the opinion, are substantially as follows: The plaintiffs' testator died in 1841, seized and possessed of the land sued for, and leaving a last will and testament, which was duly probated in the probate court of said county, and letters testamentary issued to the parties therein named as executors, in 1843. In 1863, the land was sold by the executors under a decree of the probate court, on a credit of twelve months, to one Stewart, who was placed in possession; and in the same year the sale was reported to, and confirmed by the court. It does not appear from the record that any report was made of the payment of the purchase-money, or that the court ordered title to be made to the purchaser, or that any deed was in fact

executed. The defendants claim under Stewart, but the time when he sold is not shown. At the time the executors sold the land, the " heirs " of Thomas White were of age. In 1864, one of the executors "resigned, and ceased to be executor of said will;" and on 22d December, 1865, the remaining executor filed his accounts and vouchers for a settlement, but whether for final or partial settlement, is not shown. On 12th February, 1866, the settlement was made, and the balance ascertained against the executor was distributed among the heirs; but the executor was not discharged, and there is nothing to indicate that the settlement and distribution were intended as final. On the settlement the executor charged himself with the purchase-money of said land, and it entered into, and formed a part of the balance which was distributed among the heirs; but it is not shown when it was paid, if at all, the only evidence tending to show payment being the act of the executor in charging himself therewith on said settlement. On 26th October, 1875, the plaintiffs were appointed administrators *de bonis non*, with the will annexed, of said testator, on the written application of some of the heirs. It appears from this application that the only purpose for which the appointment was sought, was to have the lands of the testator sold for distribution. It was not shown on the trial that, at the time of this appointment, there was any vacancy in the administration.

Several charges were given at request of plaintiffs, and others were requested by defendants and refused, which are here assigned as error. The rulings of the circuit court, embodied therein, are sufficiently indicated in the opinion.

SAVAGE & DANIEL, for appellants.

DENSON & DISQUE, *contra*.

SOMERVILLE, J.—The action is one of ejectment for certain lands belonging to the estate of Thomas White, deceased, who died in the year 1841. The plaintiffs were appointed administrators *de bonis non* in the year 1875, and sue in their representative capacity to recover the lands for the purposes of administration. The defendants claim the lands under a purchase made by one Stewart, from whom they claim to derive title, this purchase having been made in the year 1863, at an executors' sale effected under an order of the probate court by George W. and William C. White, who were the executors of the last will of the decedent, Thomas White, having been appointed and qualified as such in the year 1843.

It is first insisted that the plaintiffs can not recover because

[Morgan v. Casey, Adm'r.]

it does not affirmatively appear from the record that there was a vacancy in the administration when they received their appointment by the probate court in 1875—there being no evidence that their predecessors had died, resigned, or been removed. It is true that unless there was such vacancy, the second appointment would be void, and the plaintiffs could derive no power to sue under the authority of their letters of administration.—*Rambo v. Wyatt's Adm'r*, 32 Ala. 363; *Nelson v. Boynton*, 54 Ala. 368. But the rule has often been announced, and is now well settled, that when the probate court exercises the power to appoint an administrator *de bonis non*, it is always to be presumed *prima facie*, on collateral attack, that a vacancy existed, unless it affirmatively appear to the contrary. The fact being jurisdictional, and its existence necessary in order to authorize the court to exercise the power of appointment, it will be presumed on appeal in order to sustain the validity of the proceeding in question.—*Ikelheimer v. Chapman's Adm'r*, 32 Ala. 676; *Gray's Adm'r, v. Cruise*, 36 Ala. 559; *Bean v. Chapman*, 62 Ala. 58; *Burke v. Mutch*, 66 Ala. 568; *Chappell v. Williamson*, 49 Ala. 153; *Sims v. Waters*, 65 Ala. 442.

• The power and authority of a personal representative over the lands of a decedent are well defined by our statutes, and the decisions construing them. He may generally, whether the estate he represents be solvent or insolvent, maintain ejectment, or a real action in the nature of ejectment, for the recovery of the lands of his testator or intestate.—Code, 1876, § 2588; *Russell v. Erwin's Adm'r*, 41 Ala. 292; 1 Brick. Dig. 625, § 6. This right is referable to, and based upon his statutory authority to *rent* the lands of the estate; to sell them under the order of the probate court *to pay the debts* of the decedent; and *to sell them for distribution* among the heirs or devisees.—Code, 1876, §§ 2446, 2447, 2449; *Cruikshank v. Luttrell*, 67 Ala. 318; *Golding v. Golding*, 24 Ala. 129. These several powers are legitimate methods or instrumentalities in the process of administration. There is no good reason why ejectment can not be maintained against *any one else than the heirs or devisees*, as well for the *purpose of distribution* as for the payment of debts. It is true that the legal title, on the death of the testator or intestate, descends *eo instanti* to the devisees or heirs as the case may be; but it is subject to be divested for the purposes of administration. And even though possession be recovered by the personal representative, his application to sell the lands to pay debts may be contested, and defeated by proof that there are no debts due by the estate, or that the personal assets are sufficient to pay them.—*Davis v. Tarver*, 65 Ala. 98. Or where the sale is for distribution, the

15

court will not grant the order to sell unless it be shown that the lands "can not be equitably *divided* among the heirs, or devisees."—Code, 1876, § 2449. The suit here instituted by the personal representatives of the decedent is not against the heirs or devisees, but presumably in their interest and for their benefit. It is an action against strangers holding adversely to both them and the plaintiff's testator. It is, therefore, immaterial that the debts are barred or paid—an inference which is fairly deducible from the lapse of more than twenty years since the death of the decedent.

The record fails to show that the executors, who sold the lands in controversy in the year 1863, ever executed any deed of conveyance to the purchaser. The legal title, therefore, remained in the heirs, and they could recover possession by ejectment from the purchaser, or any one holding under him. For the same reason an action at law would lie in favor of the personal representative, who sues for possession of the premises in order to sell for the purpose of distribution among those entitled.—*Doe v. Hardy*, 52 Ala. 291; *Cruikshank v. Luttrell*, 67 Ala. 322.

In such actions the equitable title can not be interposed, in courts of law, to defeat the legal title. Hence, it would be no defense to this action that the purchase-money for the lands was all paid, and distributed among the heirs or devisees by the executors who made the sale under the authority of the probate court. Such payment would not operate, *at law*, as an *estoppel* either against those receiving the purchase-money, or against the administrator *de bonis non.*—*Allen v. Kellam*, 69 Ala. 442; *Collins v. Johnson*, 57 Ala. 304; *Robertson v. Bradford*, 70 Ala. 385; *Whitehead v. Jones*, 56 Ala. 152.

*Before the payment* of the purchase-money, the possession of the vendee, and of those claiming under him, would not presumptively be considered as adverse either to the heirs, or the executor. The holding would be regarded as in subordination to, and continuous recognition of the vendor's title. *After such payment*, however, the rule would be otherwise. The vendee then having a perfect equity, it is presumed that his possession is hostile to the vendor, because he is no longer under the obligation of pecuniary duty to him.—*Potts v. Coleman*, 67 Ala. 221. An adverse claim of title by the vendee, or those claiming under him, accompanied by an open, continuous, exclusive and uninterrupted possession, would mature into a good title, if it prevailed for a period of ten years, during which the statute of limitations was operative.—*Barclay v. Smith*, 66 Ala. 230; *Smith v. Roberts*, 62 Ala. 83. The statute did not commence to run, however, until after the payment of the purchase-money—the exact date of which is not disclosed

[Wright v. Strauss & Co.]

by the record—and not earlier than the 21st of September, 1865. This results from the settled rule in this State, that in computing the time necessary to create the bar of the statute of limitations, the period elapsing between the 11th day of January, 1861, and the 21st day of September, 1865, is required to be excluded.—*Carter v. Carter's Adm'r,*53 Ala. 365.

The court properly charged the jury that the records of the probate court introduced in evidence were insufficient to show payment of the purchase-money at a time ten years prior to the institution of the present suit, and its other rulings were in conformity to the principles which we have announced above.

The judgment must be affirmed.