# Hall *v.* Caperton.

*Statutory Action in Nature of Ejectment.*

87  285
s118 267
118  271
118  272

1. *Specific performance of executory agreement to convey.*—A written instrument in the form of a deed, though defective as a conveyance for

[Hall v. Caperton.]

the want of attestation or acknowledgment, is a valid executory agreement to convey, the specific performance of which a court of equity will enforce, when it is shown that the consideration was paid, and that possession was given and taken under it.

2. *Statute of limitations; possession under executory agreement to convey.*—When two persons execute to each other written instruments in the form of deeds, which are defective as conveyances for the want of attestation or acknowledgment, each instrument being the consideration of the other, and possession is given and taken by each, the statute of limitations at once commences to run, and, after the lapse of ten years, perfects a title which will maintain or defeat an action of ejectment.

3. *Sale of lands for partition.*—To justify proceedings in the Probate Court for a partition of lands, or a sale for partition (Code, §§ 3237, 3253), each part owner must be interested in the entire lands sought to be sold or partitioned.

4. *Conclusiveness of judgment or decree as bar.*—A decree rendered in an interpleader suit, in favor of one of the adverse claimants of rents in the hands of the complainant, is conclusive in a subsequent action between them for the land from which the rents accrued, each asserting the same title under which he claimed the rents.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by A. D. Hall, Minerva George, and George A. Love, minors, suing by their next friend, against Samuel Caperton, to recover the possession of a tract of land containing about 105 acres, which was particularly described in the complaint; and was commenced on the 1st October, 1886. One of the plaintiffs was the daughter of Mrs. Delaney Caperton, who died on the 7th September, 1885, and who was the surviving widow of George W. Caperton, who died on the 8th July, 1868; and Samuel Caperton, the defendant, who was a son of said George W. Caperton by a former marriage. The land sued for was part of a tract of 848 acres, which had once belonged to said George W. Caperton, and which was conveyed by him, by deed dated November 2d, 1867, on the recited consideration of $2,324.87, to four of his sons by his first marriage—namely, Samuel, Adam H., Hugh E., and John F. Caperton. Mrs. Delaney Caperton, then the wife of said George W., did not join in the conveyance, nor otherwise relinquish her dower in the land. On the 31st May, 1870, two of the grantees in said deed (Hugh E. and John F.) having died without children or their descendants, Adam H. and Samuel Caperton, the surviving grantees, procured from Mrs. Caperton a release of her dower interest in the tract of land, in consideration of their conveyance to her of the 105 acres here sued for; and instruments to that effect were reciprocally executed and delivered, neither of which was attested

or acknowledged. The conveyance to Mrs. Caperton was to her for life, with remainder to her four children by said George W. Caperton. The possession of the land was delivered to Mrs. Caperton under this instrument, and she continued in uninterrupted possession until her death. The plaintiffs in this suit claimed as her heirs at law, and as remainder-men under the deed.

The defendant denied that the plaintiffs ever had any legal title to the land, and asserted title in himself, (1) under the original deed from George W. Caperton; (2) under a purchase at a sale made under a probate decree, on the 17th December, 1881, under a petition filed by himself asking a sale for partition among the several tenants in common; and (3) as sub-purchaser at a sale made under an execution for costs issued from the Chancery Court. Mrs. Delaney Caperton, who was then living, was not made a party to the proceedings in the Probate Court, but the plaintiffs in this action were joined with the other defendants as tenants in common; and the entire tract of land, including said 105 acres, was sold under the decree. The chancery suit, under which the land was sold, was instituted on the 24th September, 1879, by Mrs. Ruth A. Caperton, the widow and administratrix of said Adam H. Caperton, with their children as his heirs at law, and Samuel Caperton, the defendant in this suit, against the other heirs at law of said George W. Caperton; and sought (1) a reformation of said deed from him to his four sons, by correcting an alleged mistake in the description of a part of the tract of land; (2) an account of the rents and profits of the land received by the several grantees, and also of the purchase-money paid by them respectively; and (3) that a lien be declared on the land in favor of the complainants, for an alleged excess of purchase-money paid by said Adam H. and Samuel Caperton over and above their share. On final hearing, on pleadings and proof, the chancellor reformed the deed, but refused to grant any other relief to them; and he divided the costs equally between the parties. The land was sold under executions for costs issued on this decree, and bought by one Samuel E. Norwood, from whom the defendant afterwards redeemed and purchased. Mrs. Delaney Caperton was not made a party to the chancery suit.

On the trial, the plaintiffs offered in evidence the original deed from George W. Caperton to his sons, and the two written instruments executed between Mrs. Delaney Caper-

[Hall v. Caperton.]

ton and Samuel and Adam H. Caperton, above described; and they also offered in evidence a transcript of the record of a chancery suit under a bill of interpleader filed by one Marcus Rudder, involving the right to the rent of the land for the year 1885, which was awarded to these plaintiffs by the decree of the chancellor, and his decree was affirmed by this court on appeal.—*Caperton v. Hall*, 83 Ala. 171. The defendant offered in evidence transcripts of the proceedings in the Probate Court and in the Chancery Court, and the several conveyances to himself. The court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiffs excepted to this charge, and they here assign it as error.

BROWN & KIRK, for appellants.—The written instrument executed by Samuel and Adam H. Caperton to Mrs. Delaney Caperton, though defective as a conveyance of the legal title, was good as color of title; and Mrs. Caperton's possession under it, for more than ten years, gave her a good title against all the world. On her death, intestate, this title descended to her heirs, the present plaintiffs; and it is unaffected by the sales under the probate and chancery decrees, because Mrs. Caperton was not made a party to these proceedings, and her interest was in no way involved in either suit.—Freeman on Judgments, § 259. Moreover, the decree in the interpleader suit is conclusive of the rights of the parties.—*Caperton v. Hall*, 83 Ala. 171; *Liddell v. Chidester*, 84 Ala. 508.

W. L. MARTIN, *contra.*—The decree in the interpleader suit has none of the elements of an estoppel, and is not conclusive of anything in this suit.—*Gilbreath v. Jones*, 66 Ala. 129; *McCall v. Jones*, 72 Ala. 368; *Hamner v. Pounds*, 57 Ala. 348; *Watts v. Rice*, 75 Ala. 289; Freeman on Judgments, § 249. The decision of this court in that case was put on the express ground, that the plaintiffs had a superior equitable right to the rents. In this action, only the legal title is involved, or can be considered; and the plaintiffs' equitable rights can not prevail against the defendant's legal title.

STONE, C. J.—On the 2d day of November, 1867, George W. Caperton executed a deed of conveyance to his four sons, Adam H., Hugh E., Samuel, and John F. Caperton, by which

[Hall v. Caperton.]

he conveyed to them, with warranty, a tract of more than eight hundred acres of land, on a recited valuable consideration of over two thousand dollars. The grantees were four of eleven children of the said George W., the fruit of his first marriage. He had married a second time, and the second wife, Delaney Caperton, filled that relation when the deed was made, and did not join in the conveyance, or otherwise relinquish her dower. The said George W. died July 8, 1868, leaving Delaney, his widow, surviving him. By her he had and left four children, one of them of posthumous birth. Hugh Caperton, one of the grantees in the deed, died October 23, 1867, before the death of his father, George W.; and John F., another of the grantees, died August 10, 1868. Neither of these left lineal descendents, and their brothers and sisters became their heirs at law.

On the 31st day of May, 1870, Adam H. Caperton and Sam. Caperton had an agreement with Mrs. Delaney Caperton, the widow, by which they agreed to convey to her one hundred and five acres, the land in controversy in this suit—part of the tract conveyed by Geo. W. Caperton to his four sons—in consideration of which she agreed to relinquish her dower claim to the residue of the tract. They attempted to carry this agreement into execution. Adam and Sam, describing themselves as "surviving partners with Hugh E. Caperton and John F. Caperton, deceased," executed a paper, by which they attempted to convey to Delaney Caperton the lands herein sued for; and she, at the same time, by written instrument, attempted to relinquish to them her dower interest in the residue of the lands. Each of these instruments is correct in form to accomplish the purpose attempted, but each was and is inoperative, as a conveyance of title, because each is without subscribing witnesses, and without certificate of acknowledgment.—3 Brick. Dig. 297, § 11. By the terms of this agreement, each of these instruments was the consideration of the other, but neither conveyed a legal title. No purchase-money remained unpaid from Mrs. Caperton, for by the agreement she was to pay none. The imperfectly executed deed to her was a sufficient executory agreement to convey, took it without the influence of the statute of frauds, and chancery would compel its specific performance.—*Jenkins v. Harrison*, 66 Ala. 345; *Roney v. Moss*, 74 Ala. 390. There are other provisions of this agreement which we will notice further on.

The proof is clear and undisputed, that on the making of

this agreement—May 31, 1870—Mrs. Delaney Caperton went into immediate possession of the one hundred and five acres of land attempted to be conveyed to her, and that she held the same in her own individual, independent right until her death in 1885. Sam. Caperton proves this himself, and proves further that he owned lands adjoining, and her possession and right of possession were never questioned during her life. Other testimony proves that, during that time, she received and enjoyed the income and profits, and held exclusive and notorious possession and control of the premises as of right, and exercised the customary acts of ownership. She became an adverse holder from the time she took possession, and asserted rightful ownership, and from that time the ten years statute of limitations commenced to run in her favor.—*Potts v. Coleman*, 67 Ala. 221; *Tillman v. Spann*, 68 Ala. 102; *Morgan v. Casey*, 73 Ala. 222.

Nor can it be said that she entered and held as dowress. There was no allotment of dower, and no proceedings were instituted looking to that result. She entered pursuant to the agreement with Adam and Sam. Caperton; and there is no pretense that there was ever any change of the terms under which she held, by any consent or act of hers. This, after ten years of such holding, gave her not only a right to defend against any adversary claim, no matter how well fortified it might be by a documentary title, but it went further, and clothed her with a title on which she could maintain a suit, even against the holder of a perfect paper title.—*Coker v. Ferguson*, 70 Ala. 284; 3 Brick. Dig. 621, §§ 63, 68, 69; *Black v. Coal & Coke Co.*, 85 Ala. 504.

The title which Mrs. Caperton had acquired by adverse holding, was the only legal title she held—the only title we can consider in this action at law. She died the holder of a legal title acquired by adverse holding; and at her death that title devolved immediately on her heirs at law, and armed them with the same right to sue and defend, which she could assert if living.—3 Brick. Dig. 325, §§ 33, 34.

There are other features of this case which must not be overlooked. When Adam and Sam Caperton contracted with Mrs. Delaney Caperton in reference to her dower, they subscribed themselves as "surviving partners." This language favors the conclusion, that their interpretation of their father's deed was, that it conveyed the title to the four brothers as joint tenants, and that they as survivors had succeeded to the entire estate. If this was their construction of the deed,

[Hall v. Caperton.]

they fell into an error. They took, under our statute, as tenants in common, between whom the right of survivorship does not obtain.—3 Brick. Dig. 692, §§ 98 *et seq.* It fol- lows, that the attempted conveyance by Adam and Sam. Caperton only bound their two one-fourth interests, equal to one undivided half, and left the remaining undivided half to descend equally and alike to all the heirs at law of Hugh E. and John F. Caperton, deceased, with no discrimination between the whole and the half blood. Some of them were possibly minors, and possibly some had died, leaving minor descendants. The record does not inform us sufficiently. This inquiry may affect the running of the statute of limi- tations as to some of the interests which it seems had centered in Sam. Caperton—the result of the two sales under the chancery and probate decrees.

In *Black v. Pratt Coal & Coke Co.*, *supra*, and authorities therein cited, the rule for determining when the statute is, and when it is not suspended as to persons not *sui juris*, is laid down. Mrs. Caperton had acquired a perfect title by the statute of limitations, against the original half belong- ing to Adam and Sam. Caperton, and against all the heirs at law of Hugh E. and John F. Caperton who can not bring themselves within some exception to the statute of limita- tions. So, to this extent, the plaintiffs have a clear right to recover in this action at law against Sam. Caperton. The precise undivided proportion of the land they are entitled to recover in this action, the record does not enable us to de- termine.

Neither the suit in equity, instituted by Ruth A. Caperton, administratrix, and others, nor the proceedings in the Pro- bate Court and sale under it, can affect the legal title vested by independent, adverse holding in Delaney Caperton, nor of her heirs, on whom that title devolved at her death. She was not made a party to either of the suits, and neither she, nor those who are her successors in legal interest, are, as to that legal interest, concluded thereby. The tract of one hundred and five acres involved in this suit, was improperly included in the probate court proceedings, and the sale for division or distribution. As we have shown, the claims of Adam and Sam. Caperton to the land, as well as that of all the other heirs, whose rights had become barred under the principles declared above, had vested in Mrs. Delaney Caper- ton by adverse holding, and, hence, could not be joined with the other lands in one and the same proceeding, having for

its object the partition of the land, or its sale for division or distribution.    To justify proceedings in the Probate Court for partition of lands, or for a sale for division, each part owner must be interested in the lands sought to be partitioned.

The deed from George W. Caperton to his four sons devested out of him all title to the lands conveyed, and vested it in the grantees.    There could, therefore, be no one claiming an interest in the lands as heirs of George W. Caperton. He had parted with the title, and thereby left in himself no estate to transfer.    When Hugh E. and John F. Caperton died, each the holder of an undivided fourth interest in the lands, their living brothers and sisters, and the descendants, if any, of such as had died, became inheritors from them, and not from George W. Caperton, their father.    So, it was the tenancy in common, created by the devolution of the title of Hugh E. and John F. Caperton on their deaths, which gave rise to the partition proceedings in the Probate Court. No part of their interest or title devolving on Mrs. Delaney Caperton, she was not, and could not be classed as an inheritor from either of them; and hence her possession could not be as heir, or as one of the tenants in common.    If it had been, possibly it would require twenty years of hostile, adversary holding by her, to bar the partition proceedings. *Bozeman v. Bozeman*, 82 Ala. 389.    But we need not decide this, as she filled no such relation.    She held in independent claim of right, and hostile to the whole world, except her own children, as we shall hereafter show.

The only legal title in the lands in controversy, which Sam. Caperton can maintain, are those possible interests in the descent from Hugh E. and John F. Caperton, which, by reason of exceptions from the statute of limitations, were not barred by Mrs. Delaney Caperton's long adverse holding. The legal title to these possible interests, it would seem, vested in Sam. Caperton by virtue of his purchases, and these can not be recovered in this action at law.

The lands in controversy were let to rent for the year 1885, by Rudder, acting as agent of Mrs. Delaney Caperton. During the year, and before the rent matured, Mrs. Caperton died, leaving four surviving heirs at law; one daughter, Mrs. Love, and three grandchildren, offspring of her other daughters, who had previously died.    When the rent matured, Rudder, the agent, collected it of the tenant, and had it in hand.    The said fours heirs at law of Mrs. Caperton

[Hall v. Caperton.]

claimed the money, on two grounds: first, as express remainder-men under the deed of Mrs. Caperton; and second, as her heirs at law. Sam. Caperton also asserted claim to the rent money, claiming that the land was his, and that the rent should follow the title. He rested his claim on the several alleged chains of title referred to above—namely, the titles acquired under the chancery sales, and under the probate sale for division. He had acquired these several titles before the death of Mrs. Caperton in 1885. So, as we have said, each party claimed the rent money, as an incident to the claim and title each asserted.

Rudder, having the money, and being only a stake-holder, in March, 1886, filed his bill of interpleader, making the said Sam. Caperton and the said heirs at law of Delaney Caperton, the plaintiffs in this suit, parties defendant, and prayed that they be decreed to interplead, and determine which party was entitled to the rent money. No defect in the bill of interpleader is pointed out, and none is perceived. The chancellor entertained the bill, and the parties did interplead. In March, 1887, he rendered his final decree in the cause. In his decree, the chancellor said: "Samuel Caperton has not been successful in sustaining his right to the money due for the rent of said land for 1885. These rents would follow the title." He decreed that the rent money should be paid the said heirs at law of Delaney Caperton, and that Sam. Caperton should pay the costs. The case had been submitted "on register's report, pleadings and proof, as noted by the register, for final decree."

Sam. Caperton appealed to this court, and the decree of the chancellor was affirmed.—Caperton v. Hall, 83 Ala. 171. This court, without passing on the legal title of Delaney Caperton's heirs, speaking of the unattested instrument which Adam and Sam. Caperton had given to Delaney in 1870, said: "The instrument operates to confer on appellees an equitable title, and a consequent claim to the rent, which equity will regard and uphold." We then proceeded to declare, that the claim of Delaney Caperton's heirs was, in equity, paramount to all claim and right of Sam. Caperton in the very lands in controversy in this suit, and upon the very title here relied on, and that, as a consequence, they were entitled to the rents. The case was decided in this court on the equity feature of the very title in issue in this case, and between identically the same parties; and it was held that the equitable title of the plaintiffs in this action is superior to

[Sparks v. Woodstock Iron and Steel Company.]

Sam. Caperton's title. This is *res judicata*, and is conclusive on him in any and all proceedings between them involving the same title.—*Liddell v. Chidester*, 84 Ala. 500.

The imperfectly executed instrument from Adam and Sam. Caperton to Mrs. Delaney Caperton assumes to convey the land to her for life, remainder to her children. That is the instrument which was construed in *Caperton v. Hall*, 83 Ala. 171. Should Sam. Caperton, in the future trial of this case, be able to show that he has an unbarred legal title to any undivided part of the land sued for, and thus partially defeat a recovery in this suit, he will be but a trustee of the legal title so vested in him, and on a proper bill by the heirs it will be devested out of him, and vested in them. This, on the principle that this question is *res judicata*, and is not open to further controversy.

The Circuit Court erred in giving the general charge in favor of the defendant.

Reversed and remanded.