NELSON G. LIVERMORE, HENRY B. KEMBLE AND WALTER WOOD, PROSECUTORS, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF MILLVILLE, RESPONDENTS.

Submitted July 12, 1904—Decided November 14, 1904.

1. The city of Millville had power under an act (*Pamph. L.* 1888, *p.* 366) to contract with a water company for a supply of water, and to include in the contract an option to acquire the plant of the water company.

2. The statute provides that the option shall be for acquiring the land, water and water rights, for such supply on terms to be fixed in said contract. Whether an option to purchase at a sum to be fixed by commissioners, two of which are to be appointed by each party, fixes the terms upon which the plant is to be acquired, *quære.*

3. The city council resolved to acquire the plant, provided the purchase price should be fixed at a sum agreeable to the city, and appointed two commissioners; the water company, in response to this resolution, also appointed two commissioners. *Held,* that the water company acceded to the view of the city's right expressed in the resolution, and so acceded to its construction of the somewhat ambiguous option clause in the contract. The city

therefore having the discretion to take or reject the property at the sum fixed by the commissioners, there is no delegation of power to the commissioners, and the resolution is valid against the attack of taxpayers.

On *certiorari*.

Before Justices FORT and REED.

For the prosecutors, *Henry O. Newcomb, Walter H. Bacon, Joseph H. Gaskill* and *Robert H. McCarter.*

For the defendant, *Louis H. Miller.*

The opinion of the court was delivered by

REED, J. This writ brings up a resolution of the common council of the city of Millville, passed January 1st, 1904. The resolution declared that it was for the best interests of the citizens and taxpayers of Millville that the city purchase the water plant of the People's Water Company of Millville, its property and appurtenances, and the franchises, rights and privileges thereto appertaining, in pursuance of an option contained in a contract between the city of Millville and the water company, provided the purchase price should be fixed at a sum agreeable to the common council, under the eighth section of the contract.

The contract thus mentioned had been entered into between the city of Millville and the water company on November 1st, 1901.

This agreement, after providing that the company should, at its own expense, lay pipes in portions of certain streets; that it would place certain fire hydrants, of which the city should have the use for certain purposes; that its pipes should be extended, when required by common council, and that additional hydrants should be placed, and fixing a sum to be paid by the city for each hydrant; that a standpipe should be erected by the company; that a certain sum should be paid for water furnished for factories and for domestic use, then

provided for the exercise by the city of an option to purchase the plant of the water works company.

This option is contained in the eighth clause of the contract, and is in the following language: "That the said mayor and common council of the city of Millville may at any time after the completion of said water plant, and the test having been made, acquire the entire plant of the said People's Water Company of Millville, New Jersey, its franchises, rights, privileges, mains, pipes, conduits and appurtenances and attachments, including all sources of water-supply and all other property, by purchase; the price to be so paid therefor to be settled and determined by four commissioners or persons, two to be selected by the said city of Millville, and the other two by the said water company, its successors or assigns. In case the said four persons cannot agree as to the price to be paid therefor, they may select a fifth commissioner or person, and the determination and judgment of three of said commissioners or persons shall be binding and final as to the amount to be paid for said entire plant, property and rights."

The resolution of January 1st, 1904, after reciting the substance of this clause and reciting that in the opinion of common council it was for the interests of the city of Millville to purchase the plant, as already set out, resolved that two persons named were appointed commissioners for the purpose of fixing price, and directing that a notice be served upon the water company requiring it to proceed to appoint two persons to act as commissioners for that company. The appointees of the city filed their acceptances of the appointment, and the water company also appointed two commissioners, who each accepted his appointment.

At this point the proceedings were arrested by the allowance of this writ of *certiorari,* prosecuted by three taxpayers of the city of Millville. Many reasons are assigned for vacating the resolution brought up, but they may all be resolved into two grounds for attack upon the validity of that resolution—*first,* want of power in the city to purchase the plant;

and *second,* conceding the ability of the city to acquire the plant by purchase, illegality in the method provided in the option clause of the contract designed to effect that purpose.

The counsel for the city, at the outset, interposes the objection that the prosecutors are now precluded from attacking the resolution because of a previous adjudication of this court in which the contract containing the option clause was under consideration.

It is to be first observed that the record of the former *certiorari* proceedings, in which the contract was involved, does not appear as evidence in this proceeding. It is to be further observed that from what can be gathered from what is in the present case respecting the previous adjudication, inasmuch as two of the prosecutors in this were not prosecutors in the former proceeding, these two will not be estopped by the previous adjudication.

If, however, it appeared that the validity of the option clause had been passed upon in any previous case, such adjudication would be binding as a precedent. But it appears by the opinion in the previous case (Kemble *v.* City of Millville) that the attack upon the contract was made upon other ground than the invalidity of the option clause, and so the legality of that clause was not determined.

The question, therefore, now mooted seems to be *res integra.* First, then, as to the want of power in the city to purchase. Millville is a city of the third class, and there seems to be no legislation applicable to this class respecting the subject-matter of this contract. Nor does the act of 1876 (*Gen. Stat., p.* 646) cover the case, as this act was never accepted by Millville at an election held for that purpose.

There is an act, however, which is relied upon to support the contract. It is an act passed in 1888. *Pamph. L:, p.* 366; *Gen. Stat., p.* 2210. This act provides that it shall be lawful for a board of aldermen, common council, city council, aqueduct board, board of public works, water commissioners, township committee, town committee, or other board, body or department of any municipal corporation in this state having

charge or control of the water-supply of any municipal corporation, to make and enter into any contract or agreement with any water company or other company. In this statute it was further provided that such contract may contain an option for the acquiring by the municipal corporation of land, water and water rights for such supply on terms to be fixed in said contract.

It is first said that this statute is inapplicable to Millville, for the reason that the common council of that city had no control of the water-supply of the corporation.

The common council has power under its charter to provide for the maintenance of fire engines and hose companies for the prevention and suppression of fires. This power carries with it a general power to provide for a water-supply as a necessary provision to aid in the suppression of fires. To no other body was given any control over the water-supply of the city.

The common council had, therefore, charge of the water-supply of the city within the meaning of the act of 1888.

Nor do I see any force in the suggestion that because water had been furnished previously under a contract with another water company, which company had managed the water-supply, that therefore the city had lost control of the water-supply. In making the previous contract the city had merely exercised, not abandoned, its control over this matter and the power it then possessed it still retains.

It is again insisted that the act of 1888 did not empower the city to acquire the entire plant of the existing water company; but I am unable to perceive how language could be clearer to indicate that purpose than the text of the statute. I have, therefore, no doubt of the power of the city to enter into the contract containing the option.

A more substantial objection urged against the resolution is in respect to the exercise of the power given in the act to include an option clause in the contract. It is insisted that if the city has power to contract for an option to acquire this property upon terms to be fixed in the contract, yet the city

did not fix the terms in this contract, that the price to be paid was not fixed but was left to the ·judgment of commissioners to be appointed. It is thereupon insisted that the common council could not delegate to third persons the ascertainment of the amount to be paid, and by reason of this attempted delegation of power the option clause is invalid.

The first answer to this position interposed by counsel for the defendant is that the commissioners are merely to fix an amount for the guidance of the common ·council, who shall then exercise its discretion whether it will or will not take the property at the sum so fixed.

The defendant therefore insists that under the contract the city is not bound to take the plant at the sum fixed by the commissioners, but that after the commissioners have made their award the city can then exercise its option.

It is urged that this construction of the option clause evades the force of the insistence that there is a delegation of power to the commissioners to fix the terms of the purchase.

On the other hand, the prosecutors insist that the option shall precede the appraisement, and that when the amount is once fixed by the commissioners it is a finality, the city being then bound to take the works at the price so fixed. They then insist, as already observed, that the common council instead of fixing the terms of the purchase in the contract have left the most important matter; the price, to be fixed by third parties, and so have attempted to delegate the power which was vested by the statute in the common council.

The counsel for the defendant seem to concede that if the city is bound by contract, upon exercising its option, to take at the price fixed by the commissioners, the option clause is invalid, because it contains a delegation of power, as already mentioned.

It is not clear, however, that this view is sound. The cases cited upon the argument, in which a city charter has provided a municipal board other than the common council for

the appraisement of damages and the assessments of benefits for public improvements, are not in point. Doubtless, in such instances the common council cannot delegate to others functions which belong by law to such board.

The question now mooted seems to be whether the common council fixed the terms of purchase, in a statutory sense, when it provided that the price to be paid should be ascertained by the referees. It is to be remembered that the city had a right to exercise its option at any time within a period of at least twenty-five years.

The price might have been fixed at the cost of the construction of the plant, with interest at a certain per cent., with or without a discount for wear of the plant during the period of its use, or upon any other basis depending upon calculation merely.

The maxim *"Id certum est quod reddi certum potest"* would render the price certain.

In *Brown* v. *Bellows,* 4 *Pick.* 178, 188, this maxim was applied to a contract for the sale of water privileges, mills, &c., at a price to be awarded by three referees. The agreement was attacked because the price was not fixed by writing, and that the contract was unprovable by the terms of the statute of frauds for the want of certainty. But it was held otherwise.

And so Browne (*Bro. St. Fr.* 391, 397), after stating the general rule that the memorandum must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood, without recourse to parol evidence, to show the intent of the parties, observes: "It is quite obvious that the statute will be satisfied by such a statement as ascertains the price to be paid, although it mentions no specific sum—as, for instance, if the agreement is to pay a price to be settled by arbitration." *Cooth* v. *Jackson,* 6 *Ves.* 12.

But for the present purpose it is not deemed important whether the view of the prosecutors or that of the city be deemed the correct one. This seems to be so because there

has been no exercise of the option to take the property at a price to be fixed by the commissioners. The option set out in the resolution, which resolution was directed to be served upon the water company, is to purchase the water plant, *providing* the purchase price shall be fixed at a sum agreeable to the common council.

If the contract was that the city had only an option to take it at a price, then the water company was not bound to accept the request of the common council to appoint commissioners under the terms of the resolution. *Montgomery Gaslight Co.* v. *Montgomery,* 87 *Ala.* 289.

The water company is not testing the validity of the resolution, but has, by its act in appointing commissioners, accepted the view of the city council that the city is to take the water plant, if the purchase price therefor shall be fixed at a sum agreeable to the city council.

The city and the water company, the parties to the contract, have themselves put this construction upon the somewhat ambiguous eighth section of the contract. *Helme* v. *Strater,* 7 *Dick. Ch. Rep.* 591, and cases cited by Chancellor McGill on *p.* 603; and this construction is in favor of the public.

Conceding the power of the city to enter into any contract on an option of purchase, the clause in this contract is valid; but if it be admitted to be beyond the power of common council to agree to purchase upon the price to be fixed by the arbitrators, nevertheless, as the parties are proceeding under a construction which assumes that the arbitration is subject to a subsequent exercise of an option to take at the price fixed, there is no invalidity in the resolution of which the prosecutor can complain.

The writ of *certiorari* is dismissed, with costs.